DEPARTMENT OF TREASURY *v.* FAIRMOUNT GLASS WORKS, INC.

[No. 17,008.   Filed June 2, 1943.   Rehearing denied June 22, 1943.   Transfer denied September 21, 1943.]

*James A. Emmert* and *George N. Beamer,* Attorneys General, *David I. Day, Jr., Byron B. Emswiller,* and

*Joseph P. McNamara,* Deputies Attorney General, for appellant.

· *Earl B. Barnes, Hubert Hickam, Kurt F. Pantzer, Alan W. Boyd, and Charles M. Wells,* all of Indianapolis, for appellee.

DRAPER, J.—The appellee brought this action against the appellant to recover certain taxes previously paid under the Indiana Gross Income Tax Act (Acts 1933, ch. 50; Acts 1937, ch. 117), the tax periods involved being those from May 1, 1933 through December 31, 1939. Judgment below was for the appellee. The appellant assigns as error the overruling of its motion for new trial which asserts that the decision of the court is not sustained by sufficient evidence and is contrary to law.

The evidence is by way of an agreed stipulation of facts, Paragraph 3 of which reads as follows:

"Plaintiff's receipts involved herein arose from the following course of business: Plaintiff manufactures and sells glass bottles and other glass products. Said receipts were from the sale of glass bottles to persons engaged in the production and brewing of beer in Indiana. Plaintiff's said customers placed beer in said bottles, placed caps and labels thereon, and sold the bottles of beer to licensed wholesalers within Indiana for a specified price. There· was included in the total amount paid by such wholesalers a stipulated amount which said breweries, in accordance with the trade practice pertaining to said bottles, would refund or credit to said wholesalers upon return of said bottles by said wholesalers. Said specified amount was substantially the same as the cost of said bottles to plaintiff's customers. In the event the bottles were not returned to plaintiff's customers, said customers continued to retain the aforesaid stipulated amount in accordance with the usual trade practice. Most of said wholesalers returned said bottles to plaintiff's customers and were re-

funded the aforesaid stipulated amount, and said bottles were again filled and delivered by plaintiff's customers to the wholesalers under the same arrangement. This process was repeated until said bottles had been returned, refilled and redelivered an average of approximately seventeen times to plaintiff's customers before such bottles were not returned to plaintiff's customers. The bottles that were not returned were ordinarily replaced, from time to time, by plaintiff's customers through the purchase of new bottles. The wholesalers, with whom plaintiff's customers dealt, disposed of the bottles of beer to retailers under the same conditions with respect to bottles, and the retailers disposed of said bottles of beer under the same conditions with respect to bottles when the bottles were removed by the retailers' customers from the retailers' premises."

The amounts involved are also stipulated, as are all formal matters.

The question is whether the appellee was properly taxable at the rate of one percent or one-quarter of one percent, and it arises under § 3 of the original act, being Acts 1933, ch. 50, for the periods prior to April 1, 1937 and under the same section as amended in Acts 1937, ch. 117, for the periods from that date through December 31, 1939.

Section 3 of the original act provided that:

"The tax hereby provided for shall be imposed at the following rates:

"(a) Upon the entire gross income of every person engaged in the business of manufacturing, compounding, or preparing for sale, profit, or use, any article or articles, substance or substances, commodity or commodities; . . . one-fourth of one per cent.

"(b) Upon the entire gross income of every person engaged in the business of wholesaling and/or jobbing tangible commodities not specifically mentioned in subsection (d) of this section, one-fourth of one per cent.

"(c) Upon the entire gross income of every person engaged in the business of retailing of any tangible commodity or commodities not specifically mentioned in subsection (d) of this section, one per cent."

Section 3 as. amended in 1937 provides in part as follows:

"The tax upon the receipt of gross income hereby provided for, shall be measured by the amount or volume of such gross income and shall be imposed at the following rates:

"(a) With respect to that part of the gross income of every person which is received from wholesale sales, except as hereinafter provided in subsection (d) of this section, the tax shall be equal to one-fourth of one per cent of such part of the gross income. The term 'wholesale sales' means and includes only the following: (1) Sales of any tangible personal property (except capital assets of the seller) to a purchaser who purchases the same for the purpose of re-selling it in the form in which it is sold to him; . . .

"(f) With respect to that part of the gross income of every person which is received from any source not enumerated in subsections (a) to (e) inclusive, of this section, . . . the tax shall be equal to one per cent of such part of the gross income."

The act further provides that all sales not specifically defined as wholesale sales are retail sales, and are taxable at one percent, Acts 1937, ch. 117, § 3 (c).

It was said in the case of *Storen* v. *J. D. Adams Mfg. Co.* (1937), 212 Ind. 343, 7 N. E. (2d) 941; *Adams Mfg. Co.* v. *Storen* (1938), 304 U. S. 307, that "The rate does not depend upon the business in which the taxpayer is primarily engaged, but upon the activity from which each item of his gross income is received. Sales to ultimate consumers must be regarded as retail sales,

whether made by the producer of the article sold or another.

"The court erred in concluding that that part of the income of a manufacturer, which was received from sales at retail to the ultimate users, is not taxable at one per cent." In recognition of the rule laid down in that case and several in this court following it, the appellee admits that it is not entitled to the lower rate merely because it manufactured the bottles.

Decisive of the question here is the brewer's purpose in buying the bottles, the real question being whether the brewers bought the bottles from the appellee for the purpose of resale within the meaning of the Gross Income Tax Law, as contended by the appellee, so that such sales are properly taxable at the one-quarter of one percent rate applicable to "wholesale sales," or whether the brewer bought them for use by themselves as contended by the appellant, thus fixing the rate at one percent.

The regulations adopted by the Gross Income Tax Division defined wholesale sales under the original act as "(d) Wholesale—a sale made to another for resale." Regulation 9 (d) (July, 1934 ed.). "Wholesale sales are defined by the department as being any sales made to another for resale regardless of price or quantity, and whenever the taxpayer can show that the purchaser is buying an article for the purpose of reselling it, it will be deemed to be a wholesale sale and one-fourth of one percent rate will apply." Regulation 48 (July, 1934 ed.). It will be noted that the statutory definition of wholesale sales contained in § 3 of the 1937 Act provides, like Regulation 48, that a wholesale sale is a sale made to another who purposes to resell it but with the added requirement that to constitute a wholesale

sale the article must have been purchased for the purpose of reselling it *in the form in which it is sold to him.* (Our italics.)

The appellant relies strongly upon the following language above quoted from *Storen* v. *Adams Mfg. Co. supra,* that "The court erred in concluding that that part of the income of a manufacturer which was received from sales at retail to the *ultimate users* is not taxable at one percent." (Our italics.) It contends that the brewer is the ultimate user of the bottles within the meaning of the quoted language. But we believe that the appellant errs in this assumption under the facts in this case. It appears to us that the bottles are as useful to the wholesaler, the retailer and the consumer as they are to the brewer, and we believe that those purchasing bottled beverages under the arrangement mentioned here universally feel that they are the owners of the bottles and can keep or dispose of them as they see fit unless and until they choose to return them to their immediate vendor. The bottles go down the line from manufacturer to brewer to wholesaler to retailer to the customer who, after surmounting a multitude of laws, ordinances, regulations, rules and rulings, all of which are intended, and a few of which are appropriate for the purpose of curbing the unbridled enjoyment of the beverage, finally drinks it. He is the ultimate or last user of the bottle as well as its contents, and he and he alone determines whether the bottle may again enter the channels of trade and thus again become useful to its successive owners as a container of beer. The empty bottle may retrace its steps to the same brewer, it is true, but on the other hand may find itself in an ash can or being put to other uses more or less practical and advantageous to its then owner.

The appellant contends that the brewer does not purchase for resale and in fact does not sell the bottles to its customers because there is no *mutual agreement* between the parties and no *transfer of title* between the parties. With this contention we do not agree. In *City of Cannelton* v. *Collins* (1909), 172 Ind. 193, 88 N. E. 66, the following language is approved: " 'The essentials of a sale are: (1) a mutual agreement; (2) competent parties; (3) a money consideration; (4) a transfer of the absolute or general property in the subject of the sale from the seller to the buyer.' " We agree with this statement of the law but find nothing in this transaction inconsistent with it. The arrangement is no less a sale because made without profit to the seller so far as the bottle is concerned nor because the brewer's business is primarily that of selling the bottle beer instead of the beer bottle, and no proof of a formal contract of sale is necessary to qualify a transaction as one of sale. It is provided in § 58-103, Burns' 1933, that:

"Subject to the provisions of this act and of any statute in that behalf, a contract to sell or a sale may be made in writing (either with or without seal), or by word of mouth, or partly in writing and partly by word of mouth, or may be inferred from the conduct of the parties. (Acts 1929, ch. 192, § 3, p. 628.)"

The transaction as shown by the stipulation of facts and the inferences legitimately to be drawn from them is one well recognized in the law. Rule 3 (1), § 58-203, Burns' 1933 provides that:

"When goods are delivered to the buyer 'on sale or return,' or on other terms indicating an intention to make a present sale, but to give the buyer an option to return the goods instead of paying the price, *the property passes to the buyer on delivery,*

but he may revest the property in the seller by returning or tendering the goods within the time fixed in the contract, or, if no time has been fixed, within a reasonable time." (Our italics.)

The appellant argues with much plausibility that considering the fact that the brewer's principal business is that of making and selling beer, that it refills the bottles an average of seventeen times, necessarily covering a considerable period of time and that it makes no profit on the bottles clearly demonstrates that it purchases the bottles for use and not for resale within the meaning of the Act and the argument is not without appeal. However, similar situations have been dealt with by the courts. In the case of *People* v. *Cannon* (1893), 139 N. Y. 32, 49, 34 N. E. 759, 36 Am. St. Rep. 668, which was a prosecution for the violation of a criminal law of that state involving the refilling and disposition of certain marked containers without the written consent of the persons in whose name they were registered, the court says:

"The evidence here shows as it seems to us the existence of an understanding that the party may return the bottles and get back his money, or keep the bottles and regard the deposit as a payment, just as he might elect. . . . The case is barren of any evidence proving an obligation to return the bottles. . . . The taking of security for the return of the bottles from the party to whom they were delivered, so long as there is no evidence of an agreement and the party is under no legal obligation to return them, he having the right to retain them if he choose to leave the money deposited as a payment for the bottles, amounts in law to a sale of them at the election of the party to whom they are delivered."

The case of *Commonwealth* v. *Brandon Farms Milk Company* (1924), 249 Mass. 531, 144 N. E. 381, pre-

sented a situation where milk dealers delivered milk to stores in large "store jars" upon the delivery of which the storekeepers paid in addition to the price of the milk the sum of five cents for each jar and received from the milk dealer the five cents or credit therefor upon the return thereof. There was no obligation on the part of the storekeepers to return the jars and for those not returned the milk dealer retained the amount paid therefor. The same practice was followed when the milk was sold by the storekeeper to its customers. The decision turned on the question of whether these transactions amounted to sales, it being maintained by the Commonwealth that the transaction was not a sale. In that case the court, relying in part upon a statute of that state identical with Burns' 1933 § 58-203 (Rule 3 (1)) held that the transaction did constitute a sale by the milk dealer to the storekeeper. In the case of *LaSalle Cement Co.* v. *Commissioner of Internal Revenue* (1930), 19 B. T. A. 806, it was held that cloth cement bags charged to customers of the petitioner under an arrangement to redeem them at a stated sum if in good condition amounted to a sale of the bags with an obligation to repurchase. In the case of *Iten Biscuit Company* v. *Commissioner of Internal Revenue* (1932), 25 B. T. A. 870, the petitioner was engaged in manufacturing and selling biscuits, cakes, cookies and crackers and delivering these products to retailers in so-called "returnable cans" which it purchased at a cost of approximately Fifty Cents each and upon each of which the name "Iten" was stamped. It advised the trade that the cans were not being sold but that the Fifty Cents paid to it by the trade on account of the can constituted a deposit for the can, returnable upon return of the can which had little or no value for any purpose other than the storage and

display of such merchandise, and the return of the can was accepted by the petitioner regardless of its condition. The petitioner argued that the transaction was not one of sale but that it remained at all times the owner of the cans and asserted its right to a tax deduction because of the depreciation of the cans. It was there held that the transaction constituted a sale, that the cans while out of petitioner's possession were not its property and the depreciation allowance was denied. We have read a number of other cases to the same effect. While, in our interpretation of the laws of this State, we are not generally bound to heed the construction given to their laws by the courts of other jurisdictions, it is nevertheless desirable, when it can be consistently done, to so interpret them that one taxing unit may not seize upon the circumstances surrounding a transaction for the purpose of imposing or increasing a tax, while another taxing unit is seizing upon the same situation to deny or decrease an exemption or allowance. It is therefore our opinion that the transaction here is one of "sale or return" and that the property passes to the wholesaler on delivery and payment of the stipulated price. The brewer parts with the title to and the possession and control of the bottles. It retains no right to compel their return and manifestly the wholesaler could not agree to return to the brewer articles which the wholesaler in turn disposes of with no right to or certainty of return.

It is lastly contended that in any event the brewer does not purchase the bottles for the purpose of reselling them in the form in which they are sold to it, for it fills them with beer and caps and labels them before disposing of them, but to our mind no change in the form of the article occurs within the meaning of the statute. After disposing of its

contents the ultimate purchaser of the bottle has exactly what the appellee sold in the first place—an empty bottle. Its shape, structure and identity as a bottle remain unchanged and the principal further use to which it may be put remains exactly the same.

The appellee suggests that we invoke the rule that statutes levying taxes "are not to be extended by implications beyond the clear import of the language used, in order to enlarge their operation, so as to embrace transactions not specifically pointed out. In case of doubt such statutes are to be construed more strongly against the state and in favor of the citizen." *Department of Treasury of Indiana* v. *Muessel, et al.* (1941), 218 Ind. 250, 254, 255, 32 N. E. (2d) 596, but we do not find it necessary to do so. To us it seems clear that the transactions involved here are taxable, not at the one percent rate, but at the one-quarter of one percent rate.

Judgment affirmed.

NOTE.—Reported in 49 N. E. (2d) 1.