INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION *v.* KLINK.

[No. 29,058. Filed May 27, 1953. Rehearing denied August 4, 1953.]

474

*Edwin K. Steers,* Attorney General, *J. Emmett Mc-Manamon,* former Attorney General, *John J. McShane, Lloyd C. Hutchinson, Joseph E. Nowak, Robert F. Wallace, Earl E. Schmadel* and *George B. Hall,* Deputy Attorneys General, for appellant.

*Winslow E. VanHorne,* of Auburn, for appellee.

GILKISON, J.—During the years 1947, 1948 and 1949 appellee was engaged in selling soil limestone and marl to farmers in DeKalb County, Indiana, upon contracts which required delivery to be made upon fields on farms in that county and vicinity. The material sold was consumed in the direct production of tangible personal property by agriculture or horticulture. Appellee's gross receipts from this business during these years respectively were $13,615.35, $17,623.10, and $18,-373.43. Upon these gross receipts appellee paid gross income tax regularly at the rate of one-fourth of one per cent.

Appellant served notice upon appellee about October 27, 1950, of its intention to assess him for the years involved at the rate of one per cent. a total amount of $353.43, plus statutory interest.

On November 24, 1950, appellee filed with appellant his verified written protest and objection to the proposed increase in the rate of the tax with reasons. On the same date he filed his petition to transfer the cause to the DeKalb Circuit Court. To this petition appellant appeared by the attorney general and filed its answer. The cause was tried by the court and a finding and judgment was rendered for appellee.

Appellant's motion for new trial was overruled, and the appeal was perfected.

The evidence indicates that the sales transactions in question were made by appellee with an agency of the U. S. Government known as A.A.A. and P.M.A. and a number of farmers in DeKalb County. Appellee quoted the agency a separate price on the sale and delivery of lime spread on the farmers' fields in each of the several townships of the county, varying slightly in proportion to the distance of the

haul, and all of the involved receipts by him in the mentioned years were from sales so made and delivered.

There is nothing in the evidence indicating that any additional charge was made for delivering the lime spread upon the farmers' fields. This method of delivery seems to be the standard and usual manner of delivering soil lime when sold for agricultural or horticultural use. So the question presented to us is, should the receipts from sales of large quantities of soil lime to farmers delivered spread on the fields, be taxed at one-fourth of one per cent as claimed by appellee or at one per cent as claimed by appellant?

The gross income tax statute cited as supporting appellee's contention is as follows:

> "With respect to that part of the gross income of every person which is received from wholesale sales, except as hereinafter provided in subsection (e) of this section, the tax shall be equal to one-fourth of one per cent. [$\frac{1}{4}$ of 1%] of such part of the gross income. The term 'wholesale sales' means and includes only the following: . . . (2) sales of any tangible personal property as a material which is to be directly consumed in direct production by the purchaser in the business of producing tangible personal property by . . . agriculture or horticulture; . . .: Provided, further, that the term 'consumed' as used herein shall refer only to the immediate dissipation or expenditure by combustion, use or application, . . . ." Burns' 1951 Replacement, §64-2603 (a) (2).

Appellant contends that the involved activities of appellee should be governed by one or both of the provisions of the gross income tax law as follows:

> "With respect to that part of the gross income of every person which is received from any source not enumerated in subsections (a) to (f) inclusive, of this section, including but not in limitation of the foregoing, gross income from . . . personal

services, or services of any character whatsoever, . . . all funds received for the performance of contracts, . . . the tax shall be equal to one [1] per cent of such parts of the gross income . . . ." Burns' 1951 Replacement, §64-2603 (g).

"Any person receiving gross income taxable at different rates under the provisions of this act shall be subject to taxation upon his entire gross income at the highest rate applicable to any part of such gross income unless he shall segregate the parts of his gross income taxable at different rates upon his records and in the returns which he files pursuant to the provisions of this act. Such segregation shall be subject to the review of the depart- as hereinafter provided." Burns' 1951 Replacement, §64-2604.

In determining the question posed this court is governed by the rule that to authorize the collection of a gross income tax a transaction must come clearly within the statutory provisions providing therefor. In case of doubt the statute will be construed against the state and in favor of the taxpayer. *Gross Income Tax Div.* v. *Crown Develop. Co.* (1952), 231 Ind. 449, 455, 109 N. E. 2d 426, 428, and cases cited. This rule is equally binding upon us when the question presented is whether the rate of tax shall be one-fourth of one per cent or one per cent. In such a situation if there is a doubt, it must be resolved in favor of the taxpayer.

The use of soil lime to correct farm soil acidity has become essential to successful farming in a major part of the agricultural area of Indiana, and many other states. The inventive genius of our people has produced a simple method whereby the sellers of soil lime at wholesale can deliver it, spread upon the fields which are to be treated, without additional expense to the buyer. That was the nature of the transactions involved in this case. The lime so spread upon the fields becomes a part thereof and by its corrective

influence upon the soil greatly increases its productivity for a period of from six to ten years thereafter. Upon use and application it is immediately expended in the production of farm crops which in Indiana are converted into bread and meat for our people and for export. Its use is of such importance that our Federal Government renders material aid to the purchasers, as was done in this case. With respect to the gross income tax in the transactions we think it is covered by subsection (a) Cl. (2) of §64-2603, Burns' 1951 Replacement. It is not covered or contained in subsection (g) of that section. The involved transactions were sales at wholesale. They do not have the characteristics of personal services or services of any character whatsoever. They are not covered or affected by §64-2604, Burns' 1951 Replacement since all the receipts therefrom are taxable at the same rate. Since no additional charge was made for delivering the lime spread upon the fields, no segregation of any part of the sum received from the sale is possible. The sale was for a definite price per ton for the lime delivered as aforenoted. *Gr. Inc. Tax Dept.* v. *Harbison-Walker Ref. Co.* (1943), 113 Ind. App. 695, 48 N. E. 2d 834.

Our attention has been called to the fact that when so delivered, the lime cannot be reassembled so that it might be resold at retail or otherwise. The word "consumed" as used in subsection (a) cl. 2, §64-2603, Burns' 1951 Replacement above quoted, is by that subsection defined thus:

"That the term 'consumed' as used herein shall refer only to the immediate dissipation or expenditure by combustion, use, or application. . . ."

In determining the question presented in this case we are governed necessarily by this definition. *Gross In-*

*come Tax Div.* v. *Crown Develop. Co.* (1952), 231 Ind. 449, 456, 109 N. E. 2d 426, 428, supra, and cases cited, note 1. *R. L. Shirmeyer, Inc.* v. *Ind. Revenue Bd.* (1951), 229 Ind. 586, 591, 99 N. E. 2d 847. In the case before us it is certain there is involved a dissipation or expenditure by use. The term "immediate" as used in this definition admits a wide variety of definitions. Our courts have consistently said that when the term "immediate" is used in contracts or statutes, it means that the act referred to shall be accomplished within such convenient time as is reasonably requisite. *Gr. Inc. Tax Dept.* v. *Harbison-Walker Ref. Co.* (1943), 113 Ind. App. 695, 700, 48 N. E. 2d 834, *supra. The Insurance Company of North America* v. *Brim* (1887), 111 Ind. 281, 286, 12 N. E. 315. *Martin et al.* v. *Pifer* (1884), 96 Ind. 245, 248, *Pacific Mut. Life Ins. Co.* v. *Branham* (1904), 34 Ind. App. 243, 249, 70 N. E. 174.

The undisputed evidence shows that when the soil lime is spread upon farm land it immediately begins the gradual expenditure of its corrective powers and does not cease until its powers along this line are completely exhausted which may require from six to ten years. A major merit of this soil treatment is the gradual expenditure noted and the corresponding crop improvement during each of the years thereof. It is this feature that gives value to farm lime and makes it merchantable to farmers, in huge quantities. Since it starts its expenditure by use immediately on application to the soil and continues to so function during the period noted, it seems to come clearly within subsection (a) cl. 2, §64-2603 Burns' 1951 Replacement.

Finding no error in the record the judgment of the trial court is affirmed.

NOTE.—Reported in 112 N. E. 2d 581.