**INDIANA DEPARTMENT OF STATE REVENUE, Defendant-Appellant,**

v.

**MARTIN MARIETTA CORPORATION, Plaintiff-Appellee.**

No. 2–177A20.

Court of Appeals of Indiana, Fourth District.

Dec. 27, 1979.

Theo. L. Sendak, Atty. Gen., David L. Steiner, Deputy Atty. Gen., Indianapolis, for appellant.

Michael R. Fruehwald, Indianapolis, for appellee.

MILLER, Presiding Judge.

The Indiana State Department of Revenue (State) appeals from a trial court decision that the Standard Materials Division of Martin Marietta Corporation (Standard) is entitled to a refund of $23,376.51 plus interest for sales tax erroneously assessed and collected on freight charges paid to Standard by its customers in 1968 and 1969. The State contends the trial court erred in interpreting the applicable tax laws.

We affirm.

In 1968 and 1969, Standard was engaged in the excavation, processing and sale of sand, gravel and other aggregate materials. In most sales, at the customer's option and request, shipment of the goods was arranged by Standard. Shipments were made by independent common carriers to which Standard would advance payment. Customers were billed by single invoice that separately stated the price of the goods and the freight charges. No profit was made from the freight charges advanced to the carrier and reimbursed by the customer.

The question is whether these freight charges are taxable receipts from "selling at retail",[1] defined by the then existing statute, Ind.Ann.Stat., § 64–2601(k) (Burns Code Ed.Supp.1970),[2] as follows:

(k) The term "selling at retail" means and includes only a transaction by a "retail merchant" by which the ownership of tangible personal property is transferred, conditionally or otherwise, for a consideration, when such transfer is made in the ordinary course of the transferor's regularly conducted business and when such property is acquired by the transferor for the purpose of resale and is acquired by the transferee for any purpose other than the purposes designated in subsection (a) of section 3 [§ 64–2603] of this chapter; Provided, however, That only so much of the consideration as represents the price at which such property is or may be sold without the rendition of any service whatever by the transferor in respect to such property and such bona fide charges separately stated on the records of the transferor as may be added to or included

---

**1.** Ind.Ann.Stat. § 64–2651 (Burns Code Ed. Supp.1970) provided:

"In addition to the gross income tax imposed by this act [64–2601—64–2668], an additional excise tax, to be known as the state gross retail tax, is hereby imposed on transactions of retail merchants constituting selling at retail, as defined in section 37 [64–2652] . . ."

Ind.Ann.Stat. § 64–2652 (Burns Code Ed.Supp. 1970) provided:

"For the purpose of the state gross retail tax and use tax: (a) Transactions of retail merchants constituting selling at retail shall include all transactions defined as 'selling at retail' in subsection (k) of section 1 [64–2601] of this chapter . . ."

For present law, see *Ind.Code* 6–2–1–37; *Ind. Code* 6–2–1–38.

**2.** For present law, see *Ind.Code* 6–2–1–1(k).

in such consideration for the preparation, fabrication, alteration, modification, finishing, completion, delivery or other services performed in respect to such property, and not to any extent in respect to any property owned by the transferee, or by or on behalf of the transferor prior to the delivery of the property to the transferee, or to the place of delivery designated by the transferee shall be considered to be received from "selling at retail".

This statute permits imposition of sales tax only if the transportation services were incurred "prior to the delivery of the property to the transferee, or to the place of delivery designated by the transferee" . . . . No sales tax may be imposed upon "services performed . . . to any extent in respect to any property owned by the transferee . . . ." Because the agreements of sale between Standard and its customers were not evidenced by a writing, and no discussion of "delivery" or "passage of title" occurred between buyer and seller, the trial court thought it appropriate to refer to the law of sales for assistance in its interpretation of the tax laws. In so doing, the trial court concluded:

6. Under IC 1971, 26–1–2–308 and 26–1–2–401(2)(a), and the authorities relating thereto, there is a strong presumption against the creation of destination contracts. In the absence of proof of a specific agreement to the contrary, a sales contract merely providing that the goods will be shipped to a given location will be deemed a shipment contract in which delivery occurs and title passes when possession of the goods is transferred to the carrier.

7. The sales contracts between Standard and its customers were shipment contracts. Title to the goods passed and delivery occurred when the goods were loaded onto the common carriers for shipment to Standard's purchasers.

8. The freight charges upon which sales tax was assessed were incurred after delivery of the property to the transferee and in respect to property owned by

the transferee and therefore cannot be included in "selling at retail" under IC 1971, 6–2–1–1(k), –37, –38.

The State does not challenge the trial court's interpretation of our commercial code or its designation of the contractual situations herein as "shipment contracts", nor does it claim the trial court was incorrect in concluding the title to the goods passed and delivery occurred when the goods were loaded onto the common carriers for shipment to the buyers and the freight charges incurred after delivery of the property to the buyers. Rather, the State asserts that subsection (k) must be read together with Ind.App.Stat. § 64–2652(i) (Burns Code Ed.Supp.1970)[3] which provided:

(i) Such taxes shall apply and be computed in respect to each unitary transaction. A unitary transaction shall include all items of property or services furnished pursuant to a single order or agreement and for which a total combined charge or selling price is computed for payment. All public utility services and commodities subject to said taxes invoiced in a single billing or statement submitted to a consumer for payment shall constitute a unitary transaction.

The State claims that by reading these two sections together the meaning of the language is clear and unambiguous and the trial court's reference to the law of sales was unnecessary and improper. Finally, it claims that, because the goods and shipping were furnished pursuant to a single order and a combined price was computed for payment, the entire amount is subject to the sales tax.

We first note the State's position has been formally rejected by the same Attorney General of Indiana who represents it in this cause. In 1972, the Commissioner of the Department of Revenue requested the opinion of the Attorney General on the exact issue raised here as follows:

Pursuant to the Indiana Code of 1971, 6–2–1–38(i), does the Gross Retail Tax

---

3. Present law may be found at *Ind.Code* 6–2–1 - 38(i).

apply to the total billing or invoice in those instances when a retail merchant separately states or lists the selling price of the tangible personal property from the charge for services and computes a combined charge for payment by the purchaser?[4]

The Attorney General responded that Ind.Code 6–2–1–38(i) did not make non-taxable services taxable merely because of a combined price, stating:

Section 38(i) defines the term 'unitary transaction', but does not impose, levy, or create a basis for taxation. A 'unitary sale' (transaction) is defined to include *all items of property and/or services* furnished pursuant to a *single* order *for which a combined charge or selling price is computed* for payment. Such transactions can only occur if the levying sections of the Act allow an imposition of such Gross Retail Tax upon services.

The levying provisions of the Act are found in Section 36 (as found in Burns' Ind.Stat.Ann. § 64–2651, IC 1971, 6–2–1–37) which provides that the Gross Retail Tax is imposed upon transactions of retail merchants constituting selling at retail as defined in the Act.

The Act, at Section 37, defines 'transaction of retail merchants constituting selling at retail' as all transactions defined as 'selling at retail' in subsection (k) of Section 1 . . .

[quotation of subsection (k) omitted]

The definition of 'selling at retail' precludes the adding of any charge for any service whatever to the price received by the merchant for the tangible personal property transferred to the retail purchaser.

### CONCLUSION

It is, therefore, my Official Opinion that pursuant to the provisions of the Gross Retail Tax Act, the retail merchant must list separately on his bills any charge for services not specifically taxable, and the selling price for tangible personal property which is taxable. For the *Indiana Gross Retail Tax applies only to the selling prices of the tangible personal property transferred to the retail purchaser, not to services.* 1972 Ops.Ind. Att'y.Gen., No. 5 at 10–12.

The Attorney General thus rejected the expansive reading of subsection (i) because such a reading would have required extension of the sales tax to transactions not intended to be taxed.

We agree with the conclusion reached by the Attorney General in his Official Opinion. To construe these statutes otherwise would render meaningless the other provisions of the Gross Retail Tax Act, which exempt transactions from taxation. Standard suggests the State's argument means "a typist's clerical act of arithmetic in computing a total combined price of itemized goods and services makes all items subject to tax, no matter what their nature or taxability in the absence of such a computation". Surely the Legislature did not intend to subject transactions to taxation depending on a method of computation.

We must, therefore, reject the State's invitation to expand the type of transactions subject to tax. In *Economy Oil Corporation v. Indiana Department of State Revenue*, (1974) 162 Ind.App. 658, 321 N.E.2d 215, this Court stated:

In construing tax statutes relating to assessment and collection, a liberal rule of construction must be indulged in order to secure their uniform implementation. *Department of Treasury of Indiana v. Dietzen's Estate* (1939), 215 Ind. 528, 21

---

4. In 1971, *Ind.Code* 6–2–1–38(i) was amended and the emphasized language added as follows:
   (i) Such taxes shall apply and be computed in respect to each unitary transaction. A unitary transaction shall include all items of property *and* /or services, *whether or not such services would otherwise be taxable*, furnished pursuant to a single order or agreement and for which a total combined charge or selling price is computed for payment. All public utility services and commodities subject to said taxes invoiced in a single billing or statement submitted to a consumer for payment shall constitute a unitary transaction.

N.E.2d 137. However, it is a well established rule of statutory construction that the statutes levying or imposing taxes are not to be extended by implication beyond the clear import of the language of the statute in order to enlarge their operation. Instead, they are to be construed more strictly against the state and in favor of the taxpayer. *Gross Income Tax Division v. Surface Combustion Corp.* (1953), 232 Ind. 100, 111 N.E.2d 50; *Ralph L. Shrimeyer, Inc. v. Indiana Revenue Board* (1951), 229 Ind. 586, 99 N.E.2d 847; *Department of Treasury of Indiana v. Muessel* (1941), 218 Ind. 250, 32 N.E.2d 596.

In further support of our conclusion, we note that the deficiency assessed on Standard's 1969 transactions was reduced by the Department of Revenue, after protest and hearing, upon the showing that certain of the 1969 sales were evidenced by a *written memorandum* which contained a proviso stating:

> If shipment is via . . . common carrier, Delivery shall occur immediately after the products are loaded into such carrier at the point of shipment, and Purchaser shall at its own expense and risk ship such products to the point of destination; provided, however, that if such expense of shipment is prepaid by Seller, Purchaser shall reimburse Seller therefore.

The Department of Revenue determined that:

> The tangible personal property had reached the place agreed on by the parties before delivery charges were incurred, thus, such receipts for shipping were not from selling at retail and have not been taxed for purposes of the sales tax.

It appears that those charged by law who are most concerned with the administration of the statutes in question consider the receipts for shipping as not being derived from selling at retail and not subject to the sales tax. Such administrative interpretation is entitled to substantial weight by the courts in construing the meaning of a statute. *Baker v. Compton*, (1965) 247 Ind. 39, 211 N.E.2d 162; *Economy Oil Corporation v. Indiana Department of State Revenue, supra.* We fail to comprehend why the challenged oral transactions are not as "unitary" as those evidenced by a written memorandum. Further, we disagree that subjection (i) was intended to cover transactions such as those in the present case. We believe this subsection to more properly apply to those instances in which the transfer of personal property and rendition of services are inextricable and indivisible, thus subjecting to sales tax the entire amount of payment. *See Gross Income Tax Division v. L. S. Ayres & Co.*, (1954) 233 Ind. 194, 118 N.E.2d 480.

As noted earlier, the State's brief argued only that the statutes in question are not ambiguous and, therefore, compel the imposition of the sales tax. It does not challenge as error the trial court's conclusion that the freight charges upon which sales tax is assessed were incurred after delivery of the property to the buyers. In this regard we find the argument of Standard to be persuasive. Although the transactions here involved were made pursuant to oral agreements, with no discussion of "delivery" or "passage of title", the relevant Commercial Code provisions [5] imply a "shipping contract" which provides that delivery occurs when the goods are placed on the carrier, *Ind.Code* 26–1–2–308, and that title to the goods passes to the buyer at the time and place of delivery. *Ind.Code* 26–1–2–401.

Thus, we agree that the freight charges were incurred *after* delivery and in respect to property owned by the buyer.

The judgment is affirmed.

CHIPMAN and YOUNG, JJ., concur.

---

5. Our Courts have continually referred to commercial law in taxation cases, apparently without objection by the State. See *Gross Income Tax Division v. Shane Mfg. Co.* (1963), 244 Ind. 279, 191 N.E.2d 310; *Gross Income Tax Division v. W. B. Conkey Co.* (1950), 228 Ind. 352, 90 N.E.2d 805, cert. den. 340 U.S. 941, 71 S.Ct. 504, 95 L.Ed. 679; *Indiana Department of State Revenue, Gross Income Tax Division v. Hoosier Metal Fabricators, Inc.* (1978), Ind.App., 379 N.E.2d 551.