COWDEN & SONS TRUCKING,
INC., Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T05–9001–TA–00004.

Tax Court of Indiana.

Aug. 1, 1991.

Joseph P. Murdock and Joseph S. Smith, Indianapolis, for petitioner.

Linley E. Pearson, State Atty. Gen. and Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Cowden & Sons Trucking, Inc. (Cowden) appeals the Indiana Department of Revenue's (Department) imposition of sales and use tax on money received from hauling services provided to its customers.

### Facts

At the time of the assessment, Cowden, an Indiana corporation, was a motor carrier engaged in the business of transporting various materials, such as sand, gravel, stone, and agricultural lime, hereinafter referred to as "stone." Ninety-five percent (95%) of Cowden's business consisted of transporting stone for contractors. For these customers, Cowden usually hauled the stone from a quarry to a construction site. Cowden never sold stone to contractors because the cost was charged to the contractor's account at the quarry. The contractors therefore paid the quarry for the stone and paid Cowden for the hauling charge.

The remaining five percent (5%) of Cowden's customers, hereinafter referred to as "non-contractor customers," were individuals who, unlike the contractors, could not easily pay the quarry directly for the stone because they did not have accounts with the quarry and could not easily pay for the stone in advance because its price is determined according to the weight of the truck's load upon acquisition. As a result, Cowden paid for the stone at the quarry, including the sales tax, and the non-contractor customers reimbursed Cowden for the stone and the sales tax on the stone and paid Cowden the service charge for hauling the stone. The invoice Cowden sent to these customers did not separate the hauling charge from the charges for the cost of the stone and the sales tax Cowden previously paid to the quarry but combined the charges in one total price.

On November 19, 1987, the Department sent Cowden a notice of proposed assessment of sales and use tax, penalties, and interest in the amount of $7,329.95 for the period of January 1, 1984, through December 31, 1986. On December 15, 1987, the Department sent Cowden a notice of tax due for sales and use tax, penalties, and interest in the amount of $4,781.48 for the period ending December 31, 1986, and the amount of $9,439.56 for the period ending December 31, 1985. The Department assessed sales and use tax on Cowden's hauling receipts on the basis that the money was received in a retail unitary transaction. The Department only assessed the portion of Cowden's receipts attributable to its hauling services because Cowden already paid sales tax on the stone at the quarry. On July 20, 1990, Cowden sought and obtained from this court an injunction against paying the assessed tax, pending the outcome of a trial on the merits. *Cowden & Sons Trucking, Inc. v. Indiana Dep't of Revenue* (1990), Ind.Tax, No. 49T05–9001–TA–00004 (order granting injunction).

Additional facts will be included as necessary.

### ISSUE

Did Cowden transfer stone and render hauling services in retail unitary transactions which would subject Cowden's receipts for its hauling services to sales tax?

### DISCUSSION AND DECISION

"An excise tax, known as the state gross retail tax [sales tax], is imposed on retail transactions made in Indiana." IC 6–2.5–2–1. A taxable retail transaction is "a transaction of a *retail merchant* that constitutes *selling at retail* as is described in IC 6–2.5–4–1, . . ., or that is described in any other section of IC 6–2.5–4." IC 6–2.5–1–2(a). Selling at retail requires a transfer of tangible personal property, IC 6–2.5–4–1(b)(2), and the sale of services falls outside the scope of taxation because no transfer of tangible personal property occurs. Consequently, rendering services is not subject to sales tax except as otherwise provided in the statute.

As a practical matter, however, most sales do not involve purely providing services, on one hand, or strictly transferring tangible personal property, on the other. Instead, mixed transactions, involving the transfer of property in conjunction with the provision of services, are commonplace. Determining the portion of the price charged attributable to a taxable sale of property and the portion attributable to a non-taxable sale of services is often difficult. Accordingly, the legislature set forth parameters for imposing sales tax on mixed transactions. First, taxable property does not escape taxation merely because it is transferred in conjunction with the provision of non-taxable services. IC 6–2.5–4–1(c)(2). Second, services, generally outside the scope of taxation, are subject to sales tax to the extent the income represents "any bona fide charges which are made for preparation, fabrication, alteration, modification, finishing, completion, delivery, or other service performed in respect to the property transferred *before its transfer and* which are *separately stated* on the transferor's *records.*" IC 6–2.5–4–1(e)(2) (emphasis added). Finally, the legislature imposes sales tax on services provided in a retail unitary transaction, "a unitary transaction that is also a retail transaction." IC 6–2.5–1–2(b).

■ A unitary transaction is a transaction which "includes all items of personal property and services which are furnished under a single order or agreement and for which a total *combined* charge or price is calculated." IC 6–2.5–1–1(a) (emphasis added). Cowden's transactions with its non-contractor customers are clearly unitary transactions because Cowden furnished a single invoice charging one undivided price, a total calculated to include the combined costs of the stone, the sales tax on the stone, and the cost of the hauling service. The Department asserts Cowden's failure to separate the charges for hauling services from charges for the cost of the stone and sales tax on the stone on the invoices sent to its non-contractor customers renders its hauling service charges subject to sales tax. Nonetheless, for Cow-den's hauling services to be subject to sales tax, as the Department claims, the transaction must be not only a unitary transaction but also a retail transaction, *i.e.,* a retail unitary transaction taxed under IC 6–2.5–2–1 since it is a type of retail transaction. IC 6–2.5–1–2(b).

■ The Department asserts Cowden's services provided in unitary transactions are also retail transactions subject to sales tax because Cowden is a retail merchant. Retail merchant status is determined by meeting one of two statutory tests contained in IC 6–2.5–1–8. First, one "who is required to hold a retail merchant's certificate under IC 6–2.5–8" is presumed to be a retail merchant. IC 6–2.5–1–8. Cowden holds a retail merchant's certificate which the Department contends is conclusive proof of Cowden's retail merchant status. The critical issue, however, is not whether Cowden *holds* a retail merchant's certificate but whether Cowden is "required to hold" a retail merchant's certificate. IC 6–2.5–1–8. Retail merchants are required to obtain a retail merchant's certificate to make retail transactions in Indiana under IC 6–2.5–8–1(a). Therefore, the first test does not indicate Cowden is a retail merchant because it provides merely a circular definition that one is a retail merchant if required to hold a retail merchant's certificate, yet one is required to hold a retail merchant's certificate only if one is a retail merchant.

The second test defines a retail merchant as "a person who is described as a retail merchant in IC 6–2.5–4." IC 6–2.5–1–8.

(a) A person is a *retail merchant* making a *retail transaction* when he engages in *selling at retail.*

(b) A person is engaged in *selling at retail* when, in the ordinary course of his regularly conducted trade or business, he:

(1) acquires tangible personal property for the *purpose of resale;* and

(2) transfers that property to another person *for consideration.*

IC 6–2.5–4–1 (emphasis added). Accordingly, whether Cowden is a retail merchant and whether Cowden's unitary transactions

are taxable retail transactions both turn on whether Cowden's activities constitute selling at retail. The court therefore must inquire into the nature of the transactions to determine whether they constitute selling at retail.

During the ordinary course of its regularly conducted business, Cowden received consideration for transferring stone to its non-contractor customers; however, Cowden asserts it did not acquire the stone for the purpose of resale but instead, purchased the stone merely for the convenience of its non-contractor customers. Cowden concludes its receipts for services are not subject to sales tax because the stone was not acquired for the purpose of resale, and as a result, it did not engage in selling at retail, and it is not a retail merchant making retail transactions.

■ Conversely, the Department asserts Cowden purchased the stone from the quarry for the purpose of resale to its non-contractor customers. Cowden clearly transferred ownership of the stone for consideration. The pivotal issue is, however, Cowden's intent when it acquired the stone not whether Cowden in fact resold the stone. Was Cowden's purpose resale or convenience for its non-contractor customers?

Persuasive evidence supports Cowden's assertion that its acquisition of stone was for the convenience and accommodation of its customers, incidental to its hauling services and not for the purpose of resale. Cowden's business assets include forty-five or fifty dump trucks but do not include any quarries or stockpiles of stone. Cowden therefore has no inventory of stone to sell to customers. Cowden does not advertise the sale of stone or hold itself out as a merchant of stone. Ninety-five percent of Cowden's customers use and pay Cowden for hauling services alone; only five percent of its customers receive and reimburse Cowden for stone in addition to using and paying for its hauling services. Accordingly, customers seek out Cowden for its hauling services, and the transfer of stone is merely incidental.

■ If Cowden did not purchase stone, its non-contractor customers would have to make arrangements with two separate businesses, perhaps having to meet the hauler at the quarry to pay for the stone. Instead, at the request of individual non-contractor customers, Cowden purchases the stone from the quarry, a separate business entity which sells stone at retail and does not provide hauling services.[1] Cowden does not mark-up the price charged by the quarry for the stone plus tax when it bills these customers, but merely requires reimbursement at cost. In the context of business transactions, acquiring property with the purpose of resale commonly connotes a profit motivation which is completely lacking in Cowden's transfer of stone to its non-contractor customers.[2] Indeed, Cowden's profits derive from the sale of its hauling services according to state regulated tariff rates that include built-in profit; they do not derive from the sale of stone. Furthermore, Cowden pays sales tax at the quarry on its purchase of stone for its non-contractor customers, acting more like an ultimate consumer than a retail merchant selling at retail, who more likely would use

1. Cowden argues it merely acts as an agent, purchasing stone at its non-contractor customer's behest. Notwithstanding the relevance of an agency relationship to determining whether Cowden's services are subject to sales tax, the court's decision is amply supported without such a determination. For an example of the relevance of an agency relationship to the taxability of services, see *Pledger v. Simpson Press, Inc.* (1990), 304 Ark. 274, 801 S.W.2d 44.

2. The presence or absence of profit in a transaction is not significant in determining whether a sale has transpired. *Dep't of Treasury v. Fairmont Glass Works* (1943), 113 Ind.App. 684, 691, 49 N.E.2d 1, 4. The presence or absence of profit is, however, one factor that may indicate property was acquired with a purpose for resale, see *Indiana Department of Revenue v. Martin Marietta Corp.* (1979), Ind.App., 398 N.E.2d 1309 (a retail merchant paid freight costs in advance to a carrier and was later reimbursed without profit by the customer, and the reimbursement receipts were held not to be taxable receipts of selling at retail), although it is not the dispositive factor, see *Fairmont Glass,* 113 Ind.App. at 692–94, 49 N.E.2d at 4–5 (brewer acquired beer bottles from manufacturer with purpose of resale even though the brewer made no profit on the resale).

its retail merchant's certificate to defray payment of the sales tax.

The court is inclined to agree Cowden is not a retail merchant selling at retail because the facts in their entirety seem incompatible with finding Cowden acquired the stone for the purpose of resale, and yet they seem wholly compatible with an intent to accommodate the customer for his convenience. *See Pledger v. Simpson Press, Inc.* (1990), 304 Ark. 274, 275–276, 801 S.W.2d 44, 45 (receipts reimbursing postage costs a printer paid as a service for its customer's convenience were not subject to sales tax). Nevertheless, such a determination is unnecessary because the court agrees with and finds persuasive the reasoning in *Indiana Department of Revenue v. Martin Marietta Corp.* (1979), Ind.App., 398 N.E.2d 1309.

■ *Martin Marietta* stands for the proposition that the legislature intends to tax services rendered in retail unitary transactions only if the transfer of property and rendition of services is inextricable and indivisible. *Id.* at 1313. The Department argued a retail merchant selling at retail who also arranged and pre-paid for hauling services with independent common carriers was liable for sales tax on the entire receipts merely because the invoices for the retail transaction calculated a combined total price for itemized goods and service charges, *i.e.*, was both a retail and a unitary transaction. *Id.* at 1311. The court agreed, however, with the Attorney General's opinion rejecting an expansive reading of the definition of the term unitary transaction [3] which would require extension of the sales tax to transactions not intended to be taxed:

'Section 38(i) defines the term 'unitary transaction', but does not impose, levy, or create a basis for taxation. A 'unitary sale' (transaction) is defined to include *all items of property and/or services* furnished pursuant to a *single* order *for which a combined charge or selling price* is *computed* for payment. Such transactions can only occur if the levying

sections of the Act allow imposition of such Gross Retail Tax upon services.

. . . .

It is, therefore, my Official Opinion that pursuant to the provisions of the Gross Retail Tax Act, the retail merchant must list separately on his bills any charge for services not specifically taxable, and the selling price for tangible personal property which is taxable. For the *Indiana Gross Retail Tax applies only to the selling prices of the tangible personal property transferred to the retail purchaser, not to services.*'

*Id.* at 1312 (quoting 1972 OP. IND. ATT'Y GEN. NO. 5, pp. 10–12 (emphasis in original).

The court rejected the argument that " 'a typist's clerical act of arithmetic in computing a total combined price of itemized goods and services makes all items subject to tax, no matter what their nature or taxability in the absence of such a computation,' " responding that the legislature did not intend to tax transactions simply based on the method of computation. *Id.* at 1312. Giving effect to the legislature's intent to tax generally non-taxable services only when the transfer of property and rendition of services in a retail unitary transaction are inextricable and indivisible, the court found services were not taxable when provided after the transfer of property. *Id.* at 1313. Consequently, the divisibility of a transaction is indicated by the temporal relationship between the provision of the services and the transfer of the property, that is, services performed prior to a transfer of property indicate an inextricable transaction wholly subject to sales tax, IC 6–2.5–4–1(e)(2), and services performed after a transfer of property indicate a divisible transaction in which the sale is taxed but the services are not.

■ Cowden's hauling services are provided concurrently with the transfer of stone to non-contractor customers; therefore, the temporal relationship of the two events does not indicate whether the transaction is inextricable and indivisible. Cowden's rendering hauling services and trans-

---

**3.** IC 6–2–1–38(i), which under present law is IC    6–2.5–1–1.

ferring stone in a unitary transaction facially indicates the transaction is inextricable and indivisible; however, non-taxable services are not suddenly taxable merely because they are part of a unitary transaction. *Id.* at 1312. Indeed, Cowden's sale of stone and provision of hauling services are not inextricable and indivisible; their divisible nature convincingly demonstrated by Cowden's records, the overall nature of Cowden's business, and the nature of the unitary transactions themselves. Cowden's records clearly show an intent to treat the transactions separately. Cowden presented copies of quarry invoices listing the charge for the stone and the sales tax paid on the stone. In addition, Cowden, like every common carrier, filed with the Public Service Commission of Indiana [4] and kept for public inspection a published tariff schedule enumerating rates between points on its own route that must be charged regardless of the customer, as required by the Motor Carrier Act, IC 8–2–7–1 *et seq.* The invoice price Cowden charged its non-contractor customers equals the sum of the quarry's charge for stone and sales tax plus the published tariff rate.

The divisibility of Cowden's transactions is supported further by the overall nature of its business in which the overwhelming majority of customers exclusively receive hauling services. The infrequency of Cowden's transfers of stone emphasizes the distinct and incidental nature of Cowden's sales.

Finally, Cowden's intent to treat sales transactions separately from the service transactions is indicated by Cowden's purchase of stone from a completely separate company (a quarry) only at the request of individual non-contractor customers, unlike a retail merchant's bulk ordering stone to have on hand as inventory for customers.

The court therefore finds that even if Cowden were a retail merchant selling at retail, having acquired stone for the purpose of resale and transferred the stone for consideration, Cowden's hauling services provided in retail unitary transactions are not subject to sales tax because the transactions are not inextricable and indivisible according to Cowden's records and the facts presented.

### REGULATION 45 I.A.C. 2.2–4–2

Regulation 45 I.A.C. 2.2–4–2 states in pertinent part:

(a) Professional services, personal services, and services in respect to property not owned by the person rendering such services are not 'transactions of a retail merchant constituting selling at retail', and are not subject to gross retail tax. Where, in conjunction with rendering professional services, personal services or other services, the serviceman also transfers tangible personal property for a consideration, this will constitute a transaction of a retail merchant constituting selling at retail unless:

(1) The serviceman is in an occupation which primarily furnishes and sells services, as distinguished from tangible personal property;

(2) The tangible personal property purchased is used or consumed as a necessary incident to the service;

(3) The price charged for tangible personal property is inconsequential (not to exceed 10%) compared with the service charge; and

(4) The serviceman pays gross retail tax or use tax upon the tangible personal property at the time of acquisition.

(b) Services performed or work done in respect to property and performed prior to delivery to be sold by a retail merchant must however, be included in taxable gross receipts of the retail merchant.

. . . .

(d) A serviceman occupationally engaged in rendering professional, personal or other services will be presumed to be a retail merchant selling at retail with respect to any tangible personal property sold by him, whether or not the tangible

---

4. For the years at issue common carriers filed with the Public Service Commission of Indiana under IC 8–2–7–6, presently under IC 8–2.1–18–6 tariff rates are filed with the Department.

personal property is sold in the course of rendering such services. If, however, the transaction satisfies the four (4) requirements set forth in 6–2.5–4–1(c)(010), paragraph (1), *[subsection of (a) of this section]*, [emphasis in original], the gross retail tax shall not apply to such transaction.

The regulation addresses the taxability of mixed transactions provided by servicemen occupationally engaged in rendering services who, in the course of rendering their services, also transfer property for consideration. Relying on the true object test,[5] the Department contends the regulation is inapplicable to the case at bar because Cowden is a retail merchant selling at retail who provides incidental services rather than a serviceman incidentally transferring property. As previously stated and supported by the evidence, however, Cowden is in the business of providing hauling services with incidental sales of stone. Moreover, applying the true object test supports the same conclusion.[6] Consequently, both the facts and the outcome of the true object test would allow the court to determine the regulation is applicable. The court, nonetheless, will not determine the applicability of the regulation to instant case because the Department's erroneous assessment of Cowden's services apparently was not based on the regulation because the Department neither briefed nor argued the issue. Furthermore, although the validity of regulation 45 I.A.C. 2.2–4–2 is questionable,[7] the court, for the same reasons, will

---

5. The true object test, born of a line of gross income tax cases, characterizes mixed transactions as either sales or services. In *Samper v. Indiana Department of State Revenue* (1952), 231 Ind. 26, 106 N.E.2d 797, the Indiana Supreme Court first determined the transaction was intended as entire and indivisible, *id.* at 39, 106 N.E.2d at 803, and then determined the true object of the activity from which the gross income derived. *Id.* at 50–51, 106 N.E.2d at 809. The court found the true object dispositive of the entire transaction's character. *Id.* at 48–49, 106 N.E.2d at 807. The same analysis was employed in *Indiana Department of State Revenue v. Klink* (1953), 232 Ind. 473, 112 N.E.2d 581. The court noted the sale, delivery, and application of soil lime was intended as an indivisible transaction, stating, "no additional charge was made for delivering the lime spread upon the fields, no segregation of any part of the sum received from the sale is possible. The sale was for a definite price per ton for the lime delivered ..." *Id.* at 478, 112 N.E.2d at 583 (citing *Gross Income Tax Dep't v. Harbison–Walker Refractories Co.* (1943), 113 Ind.App. 695, 48 N.E.2d 834). The court then determined the true object of the activity from which Klink's gross income derived was wholesale sales not services because "the involved transactions ... do not have the characteristics of personal services or services of any character whatsoever." *Id.* at 478, 112 N.E.2d at 583. In *Chrome Deposit Corp. v. Indiana Department of State Revenue* (1990), Ind.Tax, 557 N.E.2d 1110, this court, citing *Samper* and *Klink,* announced a 'but for' test to determine the true object of the mixed transaction based on the intent of the parties, stating, "[b]ut for its customer's desire to purchase the chromium sleeve, Chrome Deposit would not render the incidental services of attaching the sleeve to the work roll and transporting the work rolls on behalf of its customers." *Id.* at 1114.

6. The Department's contention that Cowden's services are subject to sales tax because they were provided in a retail unitary transaction fails under both prongs of the *Samper* test as applied in *Klink* and modified by *Chrome Deposit. Supra,* n. 4. First, although Cowden's transactions conform to the definition of unitary transactions, IC 6–2.5–1–1, they were not intended to be entire and indivisible according to the facts presented. Even if meeting the definition provided conclusive proof of indivisibility, Cowden fails the second prong of the *Samper* test. The true object of the activity from which Cowden's gross income derives is furnishing hauling services, not selling at retail since customers seek out Cowden for its hauling services, not to purchase stone. *See Samper* at 50, 106 N.E.2d at 808. The transfer of ownership of the stone therefore is incidental to Cowden's rendering of hauling services. Additionally, the 'but for' test announced in *Chrome Deposit* supports the same conclusion: but for the intent of non-contractor customers to have Cowden haul stone to them, Cowden would not sell stone.

7. The validity of regulation 45 I.A.C. 2.2–4–2 is questionable on three grounds. First, it creates a presumption that *all* unitary transfers of property and services for consideration are retail transactions unless rebutted by a showing that the purpose of resale is absent, placing the burden of proving non-taxability on the taxpayer contrary to the cardinal rule that tax imposing statutes must be strictly construed against the state and in favor of the taxpayer. *Martin Marietta,* 398 N.E.2d at 1313 (quoting *Economy Oil Corp. v. Indiana Dep't of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215); *C & C Oil Co. Inc. v. Indiana Department of State Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, 1382. Second, the presumption makes *all* retail unitary trans-

not determine the validity of the regulation in light of the legislature's statutory intent.

Accordingly, the Department's imposition of sales tax upon that portion of Cow-den's receipts representing income derived from its hauling service is overruled.

actions taxable despite the legislature's intent to tax only those retail unitary transactions that are inextricable and indivisible. *Martin Marietta*, 398 N.E.2d at 1313. Third, the regulation requires the satisfaction of all four tests in subsections (a)(1) through (a)(4) as exclusive proof property was not acquired for the purpose of resale which could result in taxing transactions beyond the legislature's statutory mandate, *e.g.,* transactions, such as Cowden's, that do not satisfy all four tests *may* be subject to sales tax even if the property was not acquired for the purpose of resale.