Eric HOWLAND, Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T10–9611–TA–168.

Tax Court of Indiana.

June 19, 2003.

Mary L. Davidson, O'Brien & Davidson, Noblesville, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Indianapolis, IN, Karen Hsu, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Eric Howland (Howland) appeals the Indiana Department of State Revenue's (Department) imposition of Indiana's gross retail and use tax (sales tax) on money he received from installing satellite dishes during the 1991–1993 calendar years (years at issue). The sole issue in this case is whether Howland's sale and installation of those satellite dishes are taxable "retail unitary transactions."

## FACTS AND PROCEDURAL HISTORY

During the years at issue, Howland was the sole proprietor of Total Home Entertainment in Whiteland, Indiana. Approximately 95% of Howland's business consisted of selling and installing satellite dish systems. Typically, a customer would select a satellite system and then one of Howland's sales staff would visit the location where the equipment was to be installed in order to determine the extent of the installation services required. At that point, a sales contract was drawn up, listing the type of system and satellite programming chosen, the total cost to the customer, and the terms of payment. The contracts did not separate the installation charges from the charges for the cost of the materials or from the amount of sales tax imposed on the materials, but combined all charges into one total price.

Furthermore, all contracts allowed for a "rescission" period, meaning that once Howland's customers selected their system equipment of choice and either made a down payment and/or received financing approval, they had three days to back out of the purchase. After three days, Howland would deliver and install the equipment. Installation was generally completed within two days to one week after the end of the recission period.

In 1994, after completing an audit, the Department determined that Howland had been deficient in collecting sales tax from his customers. More specifically, the Department determined that not only was the cost of the satellite dish equipment subject to sales tax, but the money Howland received for his installation services was also taxable on the basis that it was money received in a retail unitary transaction. Consequently, the Department sent Howland a notice of proposed assessment of approximately $150,000.

On January 13, 1995, Howland protested the proposed assessment. After holding an administrative hearing, the Department, in a Letter of Findings dated May 24, 1996, denied Howland's protest.

Howland initiated this original tax appeal on November 20, 1996. The Court conducted trial on the matter on February 7, 2000. The parties presented their oral arguments on November 9, 2000. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The Court reviews final determinations of the Department *de novo*. IND. CODE § 6–8.1–5–1(h). Consequently, the Court is bound by neither the evidence nor the issues presented at the administrative level. *Snyder v. Indiana Dep't of State Revenue*, 723 N.E.2d 487, 488 (Ind. Tax Ct.2000), *review denied*. Although a statute that imposes a tax is strictly construed against the State, the burden of proving the proposed assessment is wrong rests with the person against whom the proposed assessment is made. *Clifft v. Indiana Dep't of Revenue*, 748 N.E.2d 449, 452 (Ind. Tax Ct.2001).

## DISCUSSION AND ANALYSIS

Indiana imposes an excise tax, known as the state sales tax, on retail transactions made within the state. IND.CODE § 6–2.5–2–1. A taxable retail transaction is "a transaction of a retail merchant that constitutes selling at retail as is described in IC 6–2.5–4–1 ... or that is described in any other section of IC 6–2.5–4." IND.CODE 6–2.5–1–2(a). Because selling at retail requires the transfer of tangible personal property, *see* Indiana Code § 6–2.5–4–1(b)(2), the sale of services generally falls outside the scope of taxation because no transfer of tangible personal property occurs.

As a practical matter, however, many sales transactions involve both the transfer of tangible personal property and the provision of services. For these "mixed" transactions, distinguishing the taxable sale of property from the non-taxable sale of services is often difficult. Accordingly, the legislature set forth parameters for imposing sales tax on mixed transactions. First, taxable property does not escape taxation merely because it is transferred in conjunction with the provision of non-taxable services. IND.CODE § 6–2.5–4–1(c)(2). Second, services, which generally are outside the scope of taxation, are subject to sales tax to the extent the income represents "any bona fide charges which are made for preparation, fabrication, alteration, modification, finishing, completion, delivery, or other service performed in respect to the property transferred *before its transfer and* which are *separately stated* on the transferor's records." IND.CODE § 6–2.5–4–1(e)(2) (emphases added). Third, services are also subject to sales tax when they are provided in the course of a retail unitary transaction, "a unitary transaction[1] that is also a retail transaction." IND.CODE § 6–2.5–1–2(b) (footnote added). In this case, the Department maintains that Howland's installation services are taxable because, when rendered in conjunction with the sale of the satellite dish equipment, they constitute a retail unitary transaction.

■■■ As this Court has previously explained, services rendered in retail unitary transactions are taxable only if the transfer of property and the rendition of services are inextricable and indivisible. *Cowden & Sons Trucking, Inc. v. Indiana Dep't of State Revenue*, 575 N.E.2d 718, 722 (Ind. Tax Ct.1991) (citing *Indiana Dep't of State Revenue v. Martin Marietta Corp.*, 398 N.E.2d 1309, 1312 (Ind.App.Ct. 1979)). In turn, the transfer of property and the rendition of services are inextricable and indivisible when the services are performed before the property was transferred to the transferee.[2] *See* IND.CODE § 6–2.5–4–1(e) (providing that a retail unitary transaction is taxable to the extent that income from the transaction represents (1) the price of the property transferred and (2) any bona fide charges which are made for preparation, fabrication, alteration, modification, finishing, completion, delivery, or other service performed in respect to the property transferred *before its transfer*) (emphasis added); *Frame Station, Inc. v. Indiana Dep't of State Revenue*, 771 N.E.2d 129, 131 (Ind. Tax Ct.2002). Services provided after a transfer of property, however, indicate a divisible transaction in which the sale is taxed but the services are not. Accordingly, the issue in this case turns on whether Howland's installation services were performed *before* or *after* he transferred title

1. A unitary transaction is a transaction that "includes all items of personal property and services which are furnished under a single order or agreement and for which a total *combined* charge or price is calculated." IND. CODE § 6–2.5–1–1(a) (emphasis added). Howland's transactions with his customers are clearly unitary transactions because he furnished a single sales contract charging one undivided price: a total calculated to include the combined costs of the materials, the sales tax on the materials, and the cost of installing the materials.

2. When the services are provided concurrently with the transfer of property, the Court looks to other factors to determine whether the transaction is inextricable and indivisible, such as the service-provider's records, the overall nature of its business, as well as the nature of the unitary transactions themselves. *Cowden & Sons Trucking, Inc. v. Indiana Dep't of State Revenue*, 575 N.E.2d 718, 723 (Ind. Tax Ct.1991). Such is not the case, however, in this matter.

to the satellite dish equipment to his customers.

Howland argues that he installs a customer's satellite dish equipment *after* he transfers the property to the customer. Indeed, he testified at trial that he generally considered a transaction to be complete upon delivery of the equipment to the customer. (*See* Trial Tr. at 35.) In other words, Howland considered title to the satellite dish equipment to transfer to the customer once the equipment was delivered, but before it was installed and working.

 Nevertheless, "[i]t is a general rule ... that in case of sale of personal property, where any act remains to be done before the sale is complete, the title remains in the seller." *Farmers' Nat'l Bank of Sheridan v. Coyner,* 44 Ind.App. 335, 88 N.E. 856, 858 (Ind.Ct.App.1909). This "has been explained to mean ... that where something is to be done by the seller to ascertain the identity, quantity, or quality of the thing sold, or to put it in the condition which the terms of the contract require, the title does not pass." *Id.* In the present case, the evidence shows that Howland's customers paid one price for the purchase and installation of equipment. Howland's customers therefore expected him to install the satellite system equipment and to put it in the condition of workability as a term of the contract. Until that was accomplished, title did not pass to the customers, but rather remained in Howland. *See id.* Therefore, Howland's installation services were performed prior to the transfer of the property and are subject to sales tax because they constitute retail unitary transactions under Indiana Code § 6–2.5–4–1(e).

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Department's imposition of sales tax against Howland's charges for installation services. Nevertheless, the Court REMANDS the matter to the Department for a supplemental audit.[3]

---

3. During trial, there was some confusion as to whether the Department, in calculating the amount of sales tax owed by Howland, actually calculated a "tax on tax." (*See* Trial Tr. at 123–25.) In other words, the Department recognizes that it may have taken each transaction (which already represented cost of materials, cost of labor, and applicable sales tax) and multiplied by 5% to determine the amount of sales tax due. Consequently, Howland may have been twice charged sales on the same transactions. The Court therefore remands case for a supplemental audit.