James D. MCCUTCHAN and Lisa D. McCutchan, Appellants–Plaintiffs,

v.

David R. BLANCK and Karen L. Blanck, Appellees–Defendants.

No. 32A01–0512–CV–577.

Court of Appeals of Indiana.

April 24, 2006.

258

Jeffrey A. Boggess, Greencastle, for Appellant.

Clinton E. Blanck, Maurer Rifkin & Hill, P.C., Carmel, for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants–Plaintiffs, James D. McCutchan and Lisa McCutchan (collectively, the McCutchans), appeal the trial court's grant of summary judgment in favor of Appellees–Defendants, David R. Blanck and Karen L. Blanck (collectively, the Blancks), with regard to the McCutchans' claim of breach of contract and fraud.

We affirm.

*ISSUES*

The McCutchans raise four issues on appeal, which we consolidate into two issues and restate as follows:

(1) Whether the trial court abused its discretion by striking certain portions of affidavits designated by the McCutchans in support of their opposition to the Blancks' Motion for Summary Judgment; and

(2) Whether the trial court erred when it granted summary judgment to the Blancks, concluding that there are no genuine issues of material fact establishing that the Blancks had actual knowledge of an existing defect in their home's septic system at the time of the sale.

## FACTS AND PROCEDURAL HISTORY[1]

From April of 1979 until August 23, 2004, the Blancks owned certain real estate, located on Hill Valley Drive, Pittsboro, Indiana. Three people lived in the residence. During the Blancks' ownership of the property, the septic system was serviced three times for routine maintenance. On May 25, 2004, the Blancks hired AA Septic Service & Rotary Sewer Cleaning Inc. (AA Septic Service) to perform a routine cleaning of the septic tank. AA Septic Service pumped 1,000 gallons from the tank and did not discover or experience any problems with the system.

On July 20, 2004, the McCutchans entered into an agreement to purchase the Blancks' property. Pursuant to paragraph 13 of the purchase agreement, the McCutchans reserved the right to have the property inspected prior to closing, including an inspection of the septic system. In the Seller's Residential Real Estate Disclosure Form (Disclosure Form), the Blancks represented that the "septic field/bed" is "not defective" and that there were no additions made to the house that may require improvements to the sewage disposal system.

(Appellant's App. p. 145). On July 28, 2004, prior to closing on the purchase agreement, the McCutchans hired Cornerstone Inspection Services (Cornerstone) to inspect the property, including the septic system. After inspection, Cornerstone found the septic system to be in acceptable condition. In their written report, Cornerstone clarified that:

> A stress and dye test was performed where we run approximately 300 gallons of water into the septic system along with a tracer dye. After running the water into the system, we walk the area where the septic drain field is believed to be and surrounding areas looking for any evidence of the tracer dye showing up on the surface. Acceptable indicates that no evidence of sewage water or tracer dye was found on the surface.
>
> . . . . .
>
> This report is limited to a visual inspection only. No probing or digging is done to determine the exact location or exact condition of components which are buried.

(Appellant's Supplemental App. p. 21).

On August 23, 2004, the McCutchans closed the sale and took possession of the property. Forty-seven days later, on October 9, 2004, they reported their first problem with the septic system when the system backed up into the house drains. After several system failures, the McCutchans consulted with the State Department of Health, the Hendricks County Department of Health, and a civil engineer. They concluded that the septic field cannot be replaced and, instead, a sewer line with the City of Brownsburg has to be installed.

On December 22, 2004, the McCutchans filed a Complaint against the Blancks al-

---

1. We draw Appellants' attention to Ind. Appellate Rule 46(A)(10) which requires the ap-

pealed trial court's Order to be included with the brief.

leging breach of contract and fraud. On April 6, 2005, the Blancks filed their Motion for Summary Judgment, their brief in support of the motion, and designated evidence. Thereafter, on May 10, 2005, the McCutchans filed their brief in opposition to the Blancks' motion and designated evidence. A week later, on May 17, 2005, the Blancks filed a Motion to Strike certain inadmissible statements included in the affidavits designated by the McCutchans. The McCutchans replied on June 28, 2005. After hearing arguments, on August 17, 2005, the trial court entered an Order on the Blancks' Motion to Strike and entered summary judgment in favor of the Blancks. Subsequently, on October 31, 2005, the trial court ordered the McCutchans to pay the Blancks $8,732 in attorney's fees.

The McCutchans now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Motion to Strike*

As we cannot review the trial court's ruling of summary judgment unless we know what evidence is designated for review, we first need to address the McCutchans' contention that the trial court abused its discretion by striking certain parts of its designated affidavits in support of their opposition to enter a summary judgment.[2] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Utility Center, Inc. v. City of Fort Wayne*, 834 N.E.2d 686, 691 (Ind.Ct.App.2005). We will reverse such an exercise of discretion only when the decision is clearly against the logic and effect of the facts and the circumstances before the trial court. *Id.* Affidavits in support of or in opposition to a

motion for summary judgment are governed by Indiana Trial Rule 56(E), which provides that:

> [s]upporting and opposing affidavits shall be made on personal knowledge, shall not set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein. Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

The affidavit requirements of Ind. Trial Rule 56(E) are mandatory and a trial court considering a summary judgment motion should disregard inadmissible information contained in supporting or opposing affidavits. *Duncan v. Duncan*, 764 N.E.2d 763, 766 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* A party offering the affidavit into evidence bears the burden of establishing its admissibility. *Id.*

### A. *Affidavit of Mark Landrum*

First, the McCutchans assert that the trial court improperly struck paragraphs 6, 16, and 19 from their expert's, Mark Landrum (Landrum), affidavit. After the McCutchans experienced the septic system failure, Landrum examined and serviced the septic field at the residence, and observed all three distribution boxes and every exposed finger. In an attempt to rectify the problem with the septic system, he used suction to clean the distribution boxes and seven of the fingers of solids.

Ind. Evidence Rule 702 relates to the admissibility of expert testimony. It assigns to the trial court a gatekeeping function of ensuring that an expert's testimony both rests on a reliable foundation

---

**2.** Our review of the trial court's Order shows that the trial court struck certain statements of the designated affidavits without providing any explanation for its ruling.

and is relevant to the task at hand. *Lytle v. Ford Motor Co.,* 814 N.E.2d 301, 309 (Ind.Ct.App.2004), *trans. denied.* Evid. R. 702 states:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Accordingly, two requirements must be met in order for a witness to qualify as an expert. First, the subject matter must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average layperson; and second, the witness must be shown to have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact. *Norfolk Southern Ry. Co. v. Estate of Wagers,* 833 N.E.2d 93, 101 (Ind. Ct.App.2005), *trans. denied.* However, where an expert's testimony, as here, is based upon the expert's skill or experience rather than on the application of scientific principles, the proponent of the testimony must only demonstrate that the subject matter is related to some field beyond the knowledge of laypersons and that the witness possesses sufficient skill, knowledge, or experience in the field to assist the trier of fact in understanding the evidence or determining a fact in issue. *Lytle,* 814 N.E.2d at 308–09.

In the present case, the Blancks do not dispute that Landrum qualifies as an expert, whose testimony is based upon his skill or experience. Specifically, his affidavit clarifies his credentials and provides that he has 23 years of experience in main-taining septic fields for residential customers. In addition, Landrum has been the superintendent of utilities for the town of Advance in Boone County, Indiana for 16 years. Among his duties is to maintain and serve 200 septic systems in Advance.

▪ With this in mind, we now turn to the stricken paragraphs of his affidavit. Paragraph 6 reads as follows:

A family of four should pump the tank every three years to prevent the solids from accumulating to a level in the tank that they get out into the fingers. I have reviewed information from the defendants that they only had the system pumped three times in 24 years. This is extremely neglectful of the system.

(Appellant's App. p. 150). Unlike the trial court, we find that the first sentence of paragraph 6 is a permissible statement, based upon Landrum's extensive experience in the field. It is relevant in light of the undisputed facts that the Blancks cleaned the septic field on May 25, 2004, with the McCuthchans, a family of four, taking possession on August 23, 2004, and reporting the first failure of the septic tank on October 9, 2004. However, we agree with the trial court that the second and third sentence of the paragraph should be stricken. Landrum never identified the information relied upon to make the statement and the record is devoid of any evidence that he ever talked to the Blancks. Accordingly, we conclude that the second and third sentence of paragraph 6 amount to a bald statement unsupported by any evidence.

Paragraph 16 provides: "My review of this system reveals that had it been properly maintained by the defendants, it would still be in working order." (Appellant's App. p. 152). Again, Landrum fails to identify the information relied upon with regard to the manner in which the Blancks maintained the septic system. Therefore,

we agree with the trial court that paragraph 16 is inadmissible.

Lastly, paragraph 19 states: "Based upon the information I have received it is my expert opinion that the septic system was defective at the time the defendants signed the disclosure statement and that they were experiencing problems with the system." (Appellant's App. p. 152). While Landrum, as an expert, can testify regarding the functioning of the septic tank and make expert opinions based on the McCutchans' experiences, we are at a loss to see how he determined the defectiveness of the septic system at the time the Blancks signed the disclosure statement without positively identifying the information relied upon. Thus, we find paragraph 19 to be an unsupported conclusion properly stricken by the trial court.

### B. *Affidavit of Curtis Alverson*

Next, we are called upon to examine the admissibility of statements made in Curtis Alverson's (Alverson) affidavit. The record establishes that Alverson had reached an agreement with the Blancks around May 17, 2004 to purchase the residence. After the offer was accepted and the day prior to the home inspection, the Blancks had the septic system pumped. Eventually, Alverson repudiated the contract, citing that a significant portion of his decision to exercise his right was due to his prior experience with a home with septic problems and his general familiarity with similar systems.

 The McCutchans do not appear to qualify Alverston as an expert, instead they offer his affidavit as lay opinion. In order to provide an opinion as a lay witness, Indiana Evidence Rule 701 provides that:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

An opinion under this rule is rationally based, for purposes of this rule, if a reasonable person normally could form the opinion from the perceived facts. *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 769 (Ind.Ct.App.2003). Additionally, an opinion is helpful, for purposes of the rule, if the testimony gives substance to facts, which were difficult to articulate. *Id.*

 With regard to Alverson's affidavit, the trial court struck paragraphs 5, 6, 12 and 13, and also the first sentence of paragraph 10 and the second sentence of paragraph 11. These disputed paragraphs read as follows:

5. By pumping the septic field the day prior to the inspection, [the Blancks] rendered the inspection useless as no valid test can be performed on a septic field recently pumped.

6. If the [Blancks] were telling the truth about having no knowledge of any defect in the system, the decision to pump it is illogical as they incurred an unnecessary expense. I questioned them about their decision and they represented their purpose in pumping the septic field was "good faith."

10. *I do not believe the representation made by the defendants that the septic field had not been pumped since 1998.* The lawn appeared to have been disturbed much more recently. It appeared to me that the septic field had been pumped within the past 6 months.

11. A significant portion of my decision to exercise my right to repudiate the purchase agreement was due to the issues described above. *Based upon the facts listed above, I believed that they knew the septic field was defective.*

12. After I exercised my right [to repudiate the purchase agreement], the [Blancks] attempted to retain my earnest money deposit and I had to threaten to sue them to recover it.

13. While this dispute was ongoing, the [Blancks] attempted to threaten and intimidate me. I was sent correspondence by the [Blancks] informing me that after [the Blancks] 25 years of service to the Town of Brownsburg, it would be best for me not to remain.

(Appellant's App. pp. 155–56).

As Alverson is merely a lay witness and does not reveal any special qualifications with regard to the functioning and maintenance of septic fields, we conclude that the trial court properly struck paragraph 5. The first sentence of paragraph 6 is inadmissible because it is not based on Alverson's personal knowledge or perception, but is merely speculative. Even though the second sentence of paragraph 6 could be read as a statement made by party-opponent, as the McCutchans urge us to do, we nevertheless agree with the trial court as the statement reflects the intentions and purpose of the Blancks' actions, which fall outside Alverson's personal knowledge.

Both sentences in paragraph 10 and 11 are properly struck because they are based on Alverson's personal belief of certain knowledge by the Blancks rather than being "rationally based on his perception" as a witness proffering a lay opinion. *See* Evid. R. 701. Finally, we agree with the trial court that paragraphs 12 and 13 contain inadmissible statements. Not only do we find the details following Alverson's aborted transaction with the Blancks to be irrelevant to the issue before us, and unsubstantiated by any documentation even though Alverson refers to correspondence being sent by the Blancks, the statements also amount to impermissible character evidence pursuant to Evid. R. 404(b).

C. *Affidavit of the McCutchans*

▮▮▮ Lastly, the McCutchans take issue with the trial court striking three paragraphs from their own affidavit. Specifically, the trial court found paragraphs 7, 12, and 16 to be inadmissible, which state that:

7. After examining [a statement by the Blancks' expert], we considered making a complaint to law enforcement to report the crime of perjury.

12. [The Blancks' expert] was on the property for less than 5 minutes, [the expert] told [the McCutchans] during the confrontation, that he came out here by request from the previous owners to see what was going on with the septic system.

16. We believe that the short time period between the closing date and the catastrophic failure of the septic field is a fact that the defendants knew a problem existed with it.

(Appellant's App. pp. 160–61). We affirm the trial court. In paragraph 7, the McCutchans make a legal conclusion based on a statement made by the Blancks' expert, in violation of Evid. R. 704(b). With regard to paragraph 12, we find the statement to be impermissible hearsay. Even though we agree with the McCutchans that they can testify about the duration the expert was on their property because it falls within their own knowledge, we refuse to parse together an admissible partial sentence from an entire inadmissible one-sentence statement. Paragraph 16 was properly stricken by the trial court as it is self-serving and represents a legal conclusion to the issue facing us today. *See* Evid. R. 704(b).

## II. Summary Judgment

### A. Standard of Review

Next, the McCutchans allege that the trial court erred in granting summary judgment to the Blancks. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *American Family Mut. Ins. Co. v. Hall,* 764 N.E.2d 780, 783 (Ind.Ct.App.2002), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the nonmoving party. *Id.*

### B. Actual Knowledge [3]

In support of their argument that the trial court erred in granting summary judgment to the Blancks, the McCutchans contend that the Blancks had actual knowledge of the deficiency in the septic system and thus, committed fraud when completing the Disclosure Form indicating that the septic system was in working order.

■ To establish a cause of action for fraudulent mispresentation, the McCutchans must demonstrate that (1) the Blancks made false statements of past or existing material facts; (2) the Blancks made such statements knowing them to be false or made them recklessly without knowledge as to their truth or falsity; (3) the Blancks made the statements to induce the McCutchans to act upon them; (4) the McCutchans justifiably relied and acted upon the statements; and (5) the McCutchans suffered injury. *Verrall v. Machura,* 810 N.E.2d 1159, 1162 (Ind.Ct.App. 2004), *trans denied.* Here, the McCutchans focus on the Disclosure Form to allege that the Blancks fraudulently misrepresented the condition of the septic tank. Before an offer is accepted, Indiana law requires a seller to provide a potential buyer of residential real estate with a disclosure form, which must include the owner's disclosure of the known condition of, among others, the residence's sewage system. *See* I.C. § 32–21–5–7. Moreover, I.C. § 32–21–5–11 specifically limits a seller's liability for errors contained in the form and provides that:

> The owner is not liable for any error, inaccuracy, or omission of any information required to be delivered to the prospective buyer under this chapter if:

> (1) the error, inaccuracy, or omission was not within the actual knowledge of the owner or was based on information provided by a public agency or by another person with a professional license or special knowledge who provided a written or oral report or opinion that the owner reasonably believed to be correct; and

> (2) the owner was not negligent in obtaining information from a third party and transmitting the information.

---

3. In refuting the McCutchans' contention that they knew of the defect in the septic system, the Blancks', in support of their argument, "hereby adopt and incorporate herein by reference their summary judgment argument set forth in the Appellant's App., pp. 42–46." (Appellee's Br. p. 11–12). We recently indicated that briefs should be prepared "so that each judge, considering the brief alone and independent of the transcript, can intelligently consider each question presented." *Bigler v. State,* 728 N.E.2d 889, 893 (Ind.Ct.App. 2000) (quoting *Pluard v. Patients Compensation Fund,* 705 N.E.2d 1035, 1038 (Ind.Ct. App.1999)). Accordingly, we do not look favorably upon incorporated arguments.

By granting the Blancks summary judgment, the trial court decided that there was no material question of fact regarding their knowledge that the septic system was not defective at the time the disclosure form was completed. Viewing the designated evidence most favorable to the McCutchans, we agree with the trial court.

Our review discloses that during their twenty-five year ownership of the real estate, the Blancks never experienced any problems with the septic system. While residing at the home, they had the system serviced three times, with the last routine cleaning performed by AA Septic Service on May 25, 2004. Even though they refer in their affidavit to AA Septic Service's representation that the system was properly working at the time of servicing, they did not attach any statement from AA Septic Service to the Disclosure Form submitted to the McCutchans. Instead, on July 6, 2004, the Blancks represented on the Disclosure Form that the septic field was not defective. In a separate affidavit, James Penner (Penner), the president of AA Septic Service, asserts that his company did not experience any problems with the system during the routine cleaning. However, Penner qualifies this statement by noting that he "can only comment on the workability of a given system on the day of its inspection or service. 'Workability' can be affected by such factors as excessive rainfall, increased water usage, faulty plumbing or physical damage to the system itself." (Appellant's App. p. 188).

The evidence further reflects that prior to purchasing the residence, the McCutchans hired Cornerstone to inspect the home. After inspection, Cornerstone found the septic system to be in acceptable condition. It is well settled that "a purchaser of property has no right to rely upon the representations of the vendor of the property as to its quality, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities." *Kashman v. Haas,* 766 N.E.2d 417, 422 (Ind.Ct.App.2002) (quoting *Pennycuff v. Fetter,* 409 N.E.2d 1179, 1180 (Ind.Ct.App.1980)). Nevertheless, while Cornerstone did perform an inspection of the septic system, this inspection was limited to a visual examination. Cornerstone specified that while " 'acceptable' indicates that no evidence of sewage water or tracer dye was found on the surface ... no probing or digging is done to determine the exact location or exact condition of components which are buried." (Appellant's Supplemental App. p. 21).

Here, the McCutchans clearly had a reasonable opportunity to inspect the residence, and did so with the aid of Cornerstone before purchasing. If the McCutchans had desired a more thorough inspection of the sewage system, they should have contracted for it prior to the purchase of the residence. At this point however, our established case law merely requires the buyers to be provided a reasonable opportunity, not a one hundred percent guarantee. As the McCutchans took advantage of this opportunity, they no longer relied on the Blancks' representations regarding the condition of the sewage field. Accordingly, summary judgment was properly granted.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted summary judgment as a matter of law in favor of the Blancks.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.