**ALLIED COLLECTION SERVICE, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0608–TA–76.

Tax Court of Indiana.

Dec. 22, 2008.

Brett J. Miller, Bingham McHale LLP, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Jennifer E. Gauger, Matthew R. Nicholson, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

Allied Collection Service, Inc. (Allied) appeals the Indiana Department of State Revenue's (Department) imposition of Indiana use tax on collection letters Allied purchased from an out-of-state vendor in 2003 and 2004 (the years at issue). The matter is currently before the Court on the parties' cross-motions for summary judgment. The issue for the Court to decide is whether Allied acquired those letters in a taxable "retail unitary transaction."

### FACTS AND PROCEDURAL HISTORY

The following facts are undisputed. Allied is a licensed collection agency located in Columbus, Indiana. During the years at issue, Allied was engaged by various healthcare providers to collect on the delinquent accounts of their patients.

To facilitate collections, Allied used mailing techniques, in conjunction with telephone techniques, as "federal and state compliance requirements provide that collection efforts with debtors must include specific notices and other disclosures via physical letters as opposed to other paperless means of communication." (Aff. of Terry Young in Supp. of Pet'r [ ] Mot. for Summ. J. (hereinafter, Pet'r Aff.) ¶ 16.) Allied's letters were to include "a written, clear, identifiable notice that [they were] from a Debt Collector, a[s] required by the Fair Debt Collection Properties Act ('FDCPA')." (Pet'r Aff. ¶ 17.)

During the years at issue, Allied engaged Dantom Systems, Inc. (Dantom), located in Livonia, Michigan, to produce its debt collection letters. Pursuant to their agreement, Allied electronically transmitted to Dantom collection letter templates and databases of accounts receivable information (i.e., names, addresses, amounts due, etc.). In turn, Dantom processed the information and incorporated it into the letter templates. Dantom then printed the letters, placed them in addressed envelopes with pre-addressed reply envelopes, affixed postage, and mailed the letters.[1]

Dantom billed Allied on a monthly basis. The invoices stated a single charge for each month, calculated by multiplying the total number of letters printed by a specific product, or letter type, code.[2]

---

1. 99% of the letters were mailed to recipients located in Indiana.

2. Each product code presumably carried a previously established price per letter. The agreement between Allied and Dantom indicates a per letter price of $0.46. (See Aff. of Terry Young in Supp. of Pet'r [ ] Mot. for Summ. J. (hereinafter, Pet'r Aff.) Ex. B at 2.) The Department's audit summary report, however, indicates that the per letter price was $0.435. (See Pet'r Aff. Ex. A at 9.) In any event, Dantom's cost per letter included "first-class postage for all qualified/standard-

In July of 2005, after completing an audit, the Department determined that Allied should have remitted Indiana use tax when it purchased the letters from Dantom. More specifically, the Department explained that while Dantom sold Allied both tangible personal property and a service, its invoices did not separate the charges for each. As a result, the Department determined that Allied's transactions with Dantom were retail unitary transactions and therefore taxable in their entirety. Consequently, the Department assessed Allied with a use tax liability of $7,180.77.[3]

Allied subsequently protested the assessment. After holding an administrative hearing, the Department, in a Letter of Findings dated March 21, 2006, denied Allied's protest.

Allied initiated an original tax appeal on August 16, 2006. On May 30, 2007, Allied filed a motion for summary judgment. On September 6, 2007, the Department filed a cross-motion for summary judgment. The Court conducted a hearing on the parties' motions on November 30, 2007. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Snyder v. Indiana Dept. of State Revenue*, 723 N.E.2d 487, 488 (Ind.

Tax Ct.2000), *review denied.* Cross-motions for summary judgment do not alter this standard. *Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue*, 865 N.E.2d 725, 727 (Ind. Tax Ct.2007), *review denied.*

Affidavits presented in support of, or in opposition to, a motion for summary judgment must comport with the provisions of Indiana Trial Rule 56(E). *McCutchan v. Blanck*, 846 N.E.2d 256, 260 (Ind.Ct.App. 2006) (citation omitted). That rule provides that any affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." T.R. 56(E). Furthermore, "[s]worn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id.*

## DISCUSSION AND ANALYSIS

■ Indiana imposes two functionally equivalent excise taxes: the gross retail (sales) tax and the use tax. The sales tax is imposed on retail transactions made within Indiana. IND.CODE ANN. § 6–2.5–2–1 (West 2003). The use tax is imposed "on the storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant mak-

---

ized addresses, pre-addressed reply envelopes, 600 dot resolution laser printing, all mail shop activities, postal CASS certification/address standardization, 24 hour delivery to post office and [a] daily processing activity report directed to [Allied's] fax number[,]" as well as the paper products and NCOA (national change of address) and phone number "look-ups" (i.e., verification). (Pet'r Aff. Ex. B at 2.)

**3.** Allied was actually assessed with a total use tax liability of $8,742.27 (not including interest), as the Department imposed use tax on certain other purchases made by Allied during the years at issue. Allied, however, has not challenged its use tax liability on those other purchases in this appeal.

ing that transaction."[4] IND.CODE ANN. § 6–2.5–3–2(a) (West 2003) (footnote added). Neither of these taxes, generally speaking, applies to the sale of services. *See* IND.CODE ANN. § 6–2.5–4–1(b)(2) (West 2003 & 2004) (stating that "selling at retail" requires the transfer of tangible personal property).

As a practical matter, however, transactions often occur where tangible personal property is sold in order to complete a service contract, or where services are performed in order to complete the sale of tangible personal property. For these "mixed transactions," distinguishing the taxable sale of property from the non-taxable sale of services is often difficult. Accordingly, the legislature has set forth several parameters for imposing tax on these transactions. First, taxable property does not escape taxation merely because it is transferred in conjunction with the provision of non-taxable services. A.I.C. § 6–2.5–4–1(c)(2). Second, services, generally outside the scope of taxation, are subject to tax to the extent the income represents "any bona fide charges which are made for preparation, fabrication, alteration, modification, finishing, completion, delivery, or other service performed in respect to the property transferred before its transfer and which are separately stated on the transferor's records." A.I.C. § 6–2.5–4–1(e)(2). Finally, services are also subject to tax if they are provided in the course of a retail unitary transaction, "a unitary transaction that is also a retail transaction." IND.CODE ANN. § 6–2.5–1–2(b) (West 2003). A unitary transaction is a transaction that "includes all items of personal property and services which are furnished under a single order or agreement and for which a total *combined* charge or price is calculated." IND.CODE ANN. § 6–2.5–1–1(a) (West 2003) (emphasis added).

■ Allied does not dispute the fact that its transactions with Dantom were retail unitary transactions. (*See* Pet'r Pet. at 3–4 ¶¶ 11–13.) What Allied disputes, however, is whether the service component of the subject transactions are taxable. Indeed, as this Court has previously explained, services rendered in retail unitary transactions are taxable *only if* the transfer of property and the rendition of services are inextricable and indivisible. *See Cowden & Sons Trucking, Inc. v. Indiana Dept. of State Revenue*, 575 N.E.2d 718, 722 (Ind. Tax Ct.1991) (citing *Indiana Dep't of State Revenue v. Martin Marietta Corp.*, 398 N.E.2d 1309, 1313 (Ind.App.Ct.1979)).

The divisibility of a transaction "is indicated by the temporal relationship between the provision of the services and the transfer of the property[.]" *Id.* For example, if services are performed before the property is transferred, the transaction is inextricable and wholly subject to tax. *See id.* (citing A.I.C. § 6–2.5–4–1(e)). In contrast, if the services are provided after the property is transferred, the transaction is divisible, meaning that the sale of property is taxed but not the services. *Id.* When, as in this case, the provision of services and the transfer of property are concurrent, the Court must look to other factors to determine whether or not the transaction is divisible. *See id.* at 722–23. Thus, the Court must examine Dantom's business

---

4. As this Court has previously explained, Indiana's sales tax is imposed on retail transactions that occur within Indiana; in contrast, Indiana's use tax is designed to reach the out-of-state sales of tangible personal property to Indiana residents who subsequently use, store, or consume that tangible personal property in Indiana. *See Rhoade v. Indiana Dep't of State Revenue*, 774 N.E.2d 1044, 1047 (Ind. Tax Ct.2002). The purpose for imposing Indiana's use tax is to prevent the erosion of the state's tax base when its residents make purchases in other states. *See id.*

records, the overall nature of its business, and the nature of the transactions between Dantom and Allied themselves, to determine whether the transactions are divisible. *See id.* at 723.

### A. Allied's Motion for Summary Judgment

Allied claims it is entitled to judgment as a matter of law (i.e., the subject transactions are divisible) because its agreement with Dantom is entitled "Professional *Services* Agreement," the overall nature of Dantom's business is that of a service provider, and the "true object" of the transactions between it and Dantom was for the provision of services.[5,6] (*See* Pet'r Pet. at 2 ¶ 7, 4 ¶ 13; Pet'r Mem. in Supp. of its Mot. For Summ. J. (hereinafter, Pet'r Br.) at 6–9 (emphasis and footnotes added).) As support for its claim, Allied designated as evidence the affidavit of its general manager, Terry Young (Young). Attached to Young's affidavit is a copy of the Department's proposed assessments for the years at issue, a copy of the agreement between Allied and Dantom, and a copy of a letter from Dantom's CFO to Young. (*See* Pet'r Aff. Exs. A–C.) Allied's evidence, however, is problematic in several respects.

First, Young avers that 94% of Dantom's monthly charge is allocable to services, while 6% is allocable to tangible personal property. (*See* Pet'r Aff. ¶¶ 11–12, 18–19.) He supports his conclusion by restating the contents of a letter from Dantom's CFO, which Young avers "is a true and accurate copy of correspondence received in the normal course of [Allied's] business and maintained in [its] records[.]" (Pet'r Aff. ¶ 8.) The letter provides in relevant part:

> I am in receipt of your facsimile and am writing to confirm the components of the Services that you are being billed by Dantom for monthly:
>
>> Printing/Inserting/Pre-sorting and Mailing—labor and equipment—a service to print, stuff and mail your letter—10%
>>
>> Paper/Custom Reply Envelope—physical items—6%
>>
>> Data Processing/File Transfers and Updates—a service which has nothing to do with any letter—12%
>>
>> Postage (Qualified and Non-qualified)—a service—72%[.]
>
> This will confirm that very little of our overall service involves the cost of an actual tangible product.

(Pet'r.Aff.Ex. C.)

Under Indiana Rule of Evidence 803(6), otherwise inadmissible hearsay may be admitted if it consists of records of regularly conducted business activity. Ind. Evidence Rule 803(6). Such evidence must be supported by testimony or an affidavit indicating that such records were kept in the normal course of business, and that it was the regular practice of the business to make such records. Evid. R.

---

[5.] Indeed, Allied asserts that the reason it hired Dantom was not to purchase letters, but rather to perform the labor intensive services necessary to send the letters to the debtors: folding the letters, stuffing them into envelopes, sealing the envelopes and affixing postage to the envelopes. (*See* Pet'r Reply to Resp't Cross–Mot. for Summ. J. (hereinafter, Pet'r Reply Br.) at 3–4.)

[6.] Allied explains that it determined the "true object" of the subject transactions by applying the four factor test found in 45 Indiana Administrative Code 2.2–4–2. (See Pet'r Br. at 6–9.) Contrary to Allied's assertion, however, this Court did not refer to those regulatory factors as the "true object test." (*Cf.* Pet'r Br. at 7 n. 4 *with Cowden & Sons Trucking, Inc. v. Indiana Dep't of State Revenue,* 575 N.E.2d 718, 724 (Ind. Tax Ct.1991).) In fact, the Court actually explained that the "true object test" was separate and distinct from the regulation. *See Cowden,* 575 N.E.2d at 724.

803(6). Under Indiana Evidence Rule 902(9), records of regularly conducted business falling within the scope of Rule 803(6) may be authenticated if

the custodian thereof or another qualified person certifies under oath [that the record] (i) was made at or near the time of the occurrence of the matters set forth, by or from information transmitted by[ ] a person with knowledge of those matters; (ii) is kept in the course of the regularly conducted activity, and (iii) was made by the regularly conducted activity as a regular practice.

Ind. Evidence Rule 902(9). Both rules provide, however, that a court may exclude the business record if it finds that the source of the information or the method or circumstances of the record's preparation indicate a lack of trustworthiness. Evid. R. 803(6), 902(9). Here, the circumstances surrounding the letter's preparation indicate a lack of trustworthiness.

The Department completed its audit and issued its proposed assessment in this matter in July of 2005. The letter from Dantom, however, is dated November 1, 2005. (Pet'r Aff. Ex. C.) More importantly, the "Professional Services Agreement" between Dantom and Allied at issue in this case was signed eight years earlier, in 1997. (See Pet'r. Aff. Ex. B.) These dates do not indicate to the Court that Dantom's letter was prepared and kept in the course of its regularly conducted business activity, but rather that it was prepared upon Allied's request and in preparation of Allied's impending litigation.

Second, many of Young's averments are conclusory and self-serving. For example, Young states in his affidavit that "Dantom . . . is in an industry that primarily furnishes and sells services, as distinguished from tangible personal property[.]" (Pet'r Aff. ¶ 9.) Nevertheless, Young presents no facts about Dantom which would support

that conclusion. (See Pet'r Aff.) Cf. with T.R. 56(E) (affidavits in support of a motion for summary judgment "shall set forth such facts as would be admissible in evidence"). In another example, Young states that "Dantom pays gross retail/use tax upon the paper and envelopes it uses in the [subject t]ransactions at the time of acquisition." (Pet'r Aff. ¶ 20.) Again, Young has provided no facts that support that conclusion; furthermore, he has not shown how he is competent to testify to that matter.

■ When this Court determines a motion for summary judgment, it can consider only that material deemed appropriate by Indiana Trial Rule 56(E). See McCutchan, 846 N.E.2d at 260 (citation omitted). When it is necessary for the Court to weigh that designated evidence, summary judgment is inappropriate. Bochnowski v. Peoples Fed. Sav. & Loan Ass'n, 571 N.E.2d 282, 285 (Ind.1991) (citation omitted). The Court therefore DENIES Allied's motion for summary judgment.

### B. The Department's Motion for Summary Judgment

In turn, the Department maintains that it is entitled to judgment as a matter of law (i.e., the subject transactions are inextricable and indivisible) because Dantom's "Professional Services Agreement" with Allied "indicate[s] that the majority of the components in the cost of the transaction represent postage and tangible personal property." (Resp't Br. in Supp. of [its] Mot. for Summ. J. (hereinafter, Resp't Br.) at 8 (citing Pet'r Aff. Ex. B).) Furthermore, the Department asserts that the overall nature of Dantom's business is that of a retailer of tangible personal property, and the "true object" of the subject transactions was for the sale of tangible person-

al property.[7] (*See* Resp't Br. at 9–12 (footnote added).) As support for its claim, the Department designated as evidence the "Professional Services Agreement" between Dantom and Allied, Allied's responses to its interrogatories (obtained during discovery), and a copy of the same letter that was attached to Young's affidavit as Exhibit C. (*See* Resp't Des'g Evid. Exs. A–C.)

The Department's evidence, like much of Allied's, fails to provide sufficient facts from which this Court can determine whether the subject transactions are divisible. For instance, the "Professional Services Agreement" does not indicate how much of Allied's total monthly cost is attributable to either services or tangible personal property. (*See* Resp't Des'g Evid. Ex. A at 1–4.) (*But see* Resp't Des'g Evid. Ex. A at 5 (letter from Dantom to Allied stating to "[p]lease remember that over 70% of your monthly invoice is USPS postage").) Furthermore, the Department has not provided the Court with any facts about Dantom's overall business from which it can conclude that Dantom *primarily* furnishes and sells tangible personal property as opposed to services. (*See, e.g.*, Resp't Des'g Evid. Ex. B.) As such,

the Court must also DENY the Department's motion for summary judgment.

## CONCLUSION

If there is any doubt when ruling on a motion (or motions) for summary judgment as to what conclusion the Court could reach, the Court will conclude that summary judgment is improper, given that it is neither a substitute for trial nor a means for resolving factual disputes or conflicting inferences following from undisputed facts. *See Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001) (citations omitted). In this case, neither party has put forth sufficient evidence from which the Court can determine whether the subject transactions are divisible. Consequently, neither party is entitled to summary judgment. The Court will, under separate order, schedule a case management conference with the parties to discuss pre-trial matters and scheduling.

SO ORDERED.

---

**7.** Indeed, the Department asserts that the whole point of the subject transactions was for Allied to receive "a tangible, paper-derived letter" and, as a result, Dantom's services of data processing, printing, and assembling were incidental to that final tangible product. (*See* Resp't Br. in Supp. of [its] Mot. for Summ. J. (hereinafter, Resp't Br.) at 8–9.)