ATTORNEYS FOR PETITIONERS:
**RANDAL J. KALTENMARK**
**ZIAADDIN MOLLABASHY**
BARNES & THORNBURG LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
INDIANA ATTORNEY GENERAL
**JESSICA R. GASTINEAU**
**ANDREW T. GREIN**
**KYLE C. FLETCHER**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT



FILED
Jun 03 2016, 12:00 pm
C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

JOHN AND SYLVIA
VON ERDMANNSDORFF,

    Petitioners,

          v.

INDIANA DEPARTMENT OF STATE
REVENUE,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Cause No. 49T10-1112-TA-00093

ORDER ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND
PETITIONERS' COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

**FOR PUBLICATION**
**June 3, 2016**

WENTWORTH, J.

John and Sylvia von Erdmannsdorff challenge the Indiana Department of State

Revenue's assessments of adjusted gross income tax (AGIT) for the 2000 through 2009

tax years ("years at issue"). The matter is currently before the Court on the

---

[1] Despite being entitled as a cross-motion for partial summary judgment, the Court finds, and the von Erdmannsdorffs agree, that they actually filed a counter-motion for partial summary judgment because two of their bases for relief differed from the Department's. (See Hr'g Tr. at 74-75.)

Department's Motion for Summary Judgment and the von Erdmannsdorffs' Counter-Motion for Partial Summary Judgment.[2]  The Court consolidates and restates the issues as follows:

I) Whether the von Erdmannsdorffs rebutted the presumption of correctness afforded to the Department's best information available (BIA) assessments; and if so,

II) Whether the Department erred in calculating the von Erdmannsdorffs' Indiana adjusted gross income by combining the gross receipts but failing to account for the additional business expense deductions.

Upon review, the Court finds in favor of the von Erdmannsdorffs.

## FACTS AND PROCEDURAL HISTORY

During the years at issue, the von Erdmannsdorffs were Indiana residents and thus were required to report their annual incomes and losses on Indiana income tax returns.  (See, e.g., Pet'rs' Des'g Evid., App. 1, Stip. Facts ¶ 18.)  Mrs. von Erdmannsdorff did not work outside of the couple's home.  (Pet'rs' Des'g Evid., App. 6, Ex. 4-P ¶ 5.)  Mr. von Erdmannsdorff, however, owned and operated a sole proprietorship, known as "Von's Shops," and a real property rental business.  (See Pet'rs' Des'g Evid., Apps. 1 and 6, Stip. Facts ¶ 1, Ex. 4-P ¶ 7.)

Between 2000 and 2006, Von's Shops conducted its business from two separate sites that were located on the same street in West Lafayette, Indiana.  (See Pet'rs' Des'g Evid., App. 6, Ex. 4-P ¶ 6.)  One site, which was comprised of a single building, sold comic books and rented VHS movies.  (See Pet'rs' Des'g Evid., App. 6, Ex. 4-P ¶¶ 6, 9, 11.)  The other site, which consisted of the first floor, basement, and attic of four

---

[2]  The parties have designated evidence that contains confidential information.  Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented.  See generally Ind. Administrative Rule 9.

2

interconnected buildings, sold new and used books, music in vinyl and CD formats, VHS and DVD movies, beads, greeting cards, and a variety of other items. (See Pet'rs' Des'g Evid., Apps. 1, 6, and 13, Stip. Facts ¶ 2, Ex. 4-P ¶ 6, Ex. 11-P(H).) This site also offered VHS and DVD movies for rent from 2006 to 2009. (See Pet'rs' Des'g Evid., Apps. 1 and 6, Stip. Facts ¶ 2, Ex. 4-P ¶¶ 6, 11.)

Mr. von Erdmannsdorff's rental business was comprised of a single commercial building and one or more buildings that contained four residential apartment units. (See Pet'rs' Des'g Evid., App. 6, Ex. 4-P ¶ 7.) In operating this business, Mr. von Erdmannsdorff leased the properties to his tenants, but did not provide any additional services in connection with those leases. (Pet'rs' Des'g Evid., App. 6, Ex. 4-P ¶ 7.)

In January of 2010, the Department informed the von Erdmannsdorffs that it intended to conduct an income tax audit of Von's Shops for the 2007 and 2008 tax years. (See Resp't Des'g Evid., Ex. C, Stip. Facts ¶ 3, Ex. 1-J.) The Department discovered that the von Erdmannsdorffs had not filed any federal or state income tax returns and expanded its audit to include all of the years at issue. (See Resp't Des'g Evid., Ex. C, Stip. Facts ¶ 7, Ex. 11-J at 45-46.) Subsequently, the Department issued an Investigation Summary to the von Erdmannsdorffs explaining that it had used the best information available to calculate their Indiana AGIT liabilities because the von Erdmannsdorffs had not completed their federal income tax returns nor provided any inventories of Von Shop's for the years at issue. (See Resp't Des'g Evid., Ex. C, Stip. Facts ¶ 16, Ex. 12-J at 66-72.) To determine the annual profit of Von's Shops the Department used, among other things, a sporting goods-hobby-book-music store's

3

sales financial ratio of 56.48% that it derived from BizStats[3] as an estimate of Von's Shops' cost of goods sold. (See Resp't Des'g Evid., Ex. C, Stip. Facts ¶¶ 9, 16, Ex. 3-J at 4, Ex. 12-J at 69.) Then, on October 26, 2010, the Department issued BIA Assessments to the von Erdmannsdorffs in the amount of $244,686.87 for additional AGIT, interest, and penalties. (See Resp't Des'g Evid., Ex. C, Stip. Facts ¶ 17, Ex. 13-J.)

On December 9, 2010, the von Erdmannsdorffs filed a protest and provided the Department with copies of 1) their 2000 through 2009 federal and state income tax returns and supporting workpapers prepared by a Lafayette, Indiana CPA firm, 2) two inventories of Von's Shops, and 3) several credit card statements. (See Pet'rs' Des'g Evid., Stip. Facts ¶ 18, Exs. 14-J to 14-J(X) at 96-288.) The von Erdmanndorffs asserted that their own estimates of the cost of goods sold for Von's Shops, which were derived from a reconciliation of their inventories of Von's Shops as of January 1, 2000,[4] and January 1, 2010,[5] demonstrated that they did not owe the tax, interest, or penalties assessed. (See Pet'rs' Des'g Evid., Stip. Facts ¶ 18, Ex. 14-J at 96-97.) On July 20, 2011, after conducting a hearing, the Department issued a Letter of Findings upholding

---

[3] BizStats is an online provider of free business statistics and financial ratios. See About BizStats, BIZSTATS.COM, http://www.bizstats.com/about.php (last visited Apr. 15, 2016).

[4] The January 2000 inventory was developed by approximating the historical placement of shelves and bins, confirming the historical placements of the shelves and bins by measuring floor space, estimating the historical amount of inventory on the shelves and bins, and then multiplying the total by the item's average price. (See Pet'rs' Des'g Evid., Apps. 2, 6, and 8, Ex. 4-P ¶ 22, Ex. 6-P ¶ 23, Ex. 14-J(V) at 241-43).)

[5] The January 2010 inventory of books was developed in December 2009 by measuring shelf space by the linear foot and then multiplying that figure by the average price of a book. (See Pet'rs' Des'g Evid., Apps. 2 and 6, Ex. 4-P ¶ 21, Ex. 14-J(W) at 245.) The inventory of the remaining items was developed by physically counting certain items or estimating the number of other items and then multiplying the total by the item's average price. (See Pet'rs' Des'g Evid., Apps. 2, 6 and 8, Ex. 4-P ¶ 21, Ex. 8-P ¶¶ 10-11, Ex. 14-J(W) at 244-47).)

4

the BIA Assessments in their entirety. (See Resp't Des'g Evid., Ex. C, Stip. Facts ¶¶ 21, 23, Ex. 18-J at 517-22.) The von Erdmannsdorffs subsequently requested a rehearing, which the Department denied on October 20, 2011. (See Resp't Des'g Evid., Ex. C, Stip. Facts ¶¶ 24-25, Exs. 19-J to 20-J at 523-29.)

On December 16, 2011, the von Erdmannsdorffs initiated an original tax appeal. On September 14, 2015, the Department filed its Motion and designated, among other things, the BIA Assessments as evidence. The von Erdmannsdorffs filed their Counter-Motion and designated evidence on October 29, 2015. The Court held a hearing on March 16, 2016, during which it granted the von Erdmannsdorffs' request to take judicial notice of several items that included a C-Span video profiling Von's Shops and the case of United States v. Montgomery, 747 F.3d 3023 (5th Cir. 2014). (See Hr'g Tr. at 3-4, Mar. 16, 2016; Pet'rs' Des'g Evid., App. 13, Exs. 11-P to 11-P(Z).) The Court also heard argument on the von Erdmannsdorffs' motions to strike, which ultimately were resolved in a separate order. (See, e.g., Hr'g Tr. at 4-23.) Additional facts will be supplied as necessary.

### STANDARD OF REVIEW

Summary judgment is proper when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A genuine issue of material fact exists when a fact concerning an issue that would dispose of the case is in dispute or when the undisputed facts support conflicting inferences as to the resolution of an issue. Miller Pipeline v. Indiana Dep't of State Revenue, 995 N.E.2d 733, 734 n.1 (Ind. Tax Ct. 2013).

5

## LAW AND ANALYSIS

During the years at issue, Indiana imposed a tax at the rate of 3.4% on the adjusted gross income of residents like the von Erdmannsdorffs. See IND. CODE § 6-3-2-1(a) (2000). In so doing, Indiana incorporated by specific reference certain provisions of the Internal Revenue Code and its related regulations by defining adjusted gross income under IRC § 62 as the starting point for calculating an individual's Indiana adjusted gross income. See IND. CODE § 6-3-1-3.5(a) (2000) (amended 2002). IRC § 62 provides that the term "adjusted gross income" means gross income minus certain "above-the-line deductions." See I.R.C. § 62(a)(1), (3), (4) (2000). The Internal Revenue Code further provides that "gross income" includes "all income from whatever source derived[,]" unless the income is expressly excluded. See I.R.C. § 61(a) (2000); Subaru-Isuzu Auto., Inc. v. Indiana Dep't of State Revenue, 782 N.E.2d 1071, 1075 (Ind. Tax Ct. 2003) (providing that inventory costs are excluded from gross income).

## I.

When, as here, the Department has moved for summary judgment and properly designated its BIA Assessments as evidence, it has made a prima facie case that there is no genuine issue of material fact regarding the validity of the assessed tax. See Indiana Dep't of State Revenue v. Rent-A-Center E., Inc., (RAC II), 963 N.E.2d 463, 466-67 (Ind. 2012). Consequently, the burden to produce evidence that demonstrates that there is, in actuality, a genuine issue of material fact with respect to the assessed tax has shifted to the von Erdmannsdorffs. See id. at 467. To that end, the von Erdmannsdorffs contend that their estimates for the cost of goods sold of Von's Shops successfully rebut the statutorily prescribed presumption of correctness afforded to the

6

Department's BIA Assessments. (See Pet'rs' Br. Opp'n Resp't Mot. Summ. J. & Supp. Pet'rs' [Counter-]Mot. Partial Summ. J. ("Pet'rs' Br.") at 21-28, 31-36.)

The Department, on the other hand, maintains that because Indiana Code § 6-8.1-5-4(a) requires taxpayers to contemporaneously prepare and maintain accurate books and records, the von Erdmannsdorffs' estimates, which were generated after the years at issue, are unsubstantiated and are based "on guesses originating from decade-old memories[,]" which simply cannot rebut its BIA Assessments. (See Resp't Br. Supp. Resp't Mot. Summ. J. ("Resp't Br.") at 6-9, 11-13; Resp't Reply Br. at 3-5; Hr'g Tr. at 90-93.) The Department also claims that Allied Collections Services, Inc. v. Indiana Department of State Revenue, 899 N.E.2d 69 (Ind. Tax Ct. 2008) supports its position by indicating that the Court may disregard untrustworthy estimates, like the von Erdmannsdorffs', in their entirety. (See Hr'g Tr. at 37-42.)

Indiana Code § 6-8.1-5-4(a) provides that taxpayers "must keep books and records so that the department can determine the amount, if any, of [a taxpayer's] liability for that tax year by reviewing those books and records." IND. CODE § 6-8.1-5-4(a) (2000). This Court has recently explained that "Indiana Code § 6-8.1-5-4 [] requires a taxpayer to maintain certain records [solely] to enable the Department to determine its actual tax liability, and when the taxpayer fails to do so, the Department may determine the taxpayer's liability based on the best information available to the Department." Elmer v. Indiana Dep't of State Revenue, 42 N.E.3d 185, 194 n.12 (Ind. Tax Ct. 2015). Nothing within this statute expressly precludes taxpayers from offering evidence generated post audit. Indeed, such a restriction would violate the Court's statutorily prescribed de novo standard of review. See IND. CODE § 6-8.1-5-1(i) (2016).

7

Moreover, Indiana's tax scheme expressly subjects a taxpayer to specified penalties for filing an untimely Indiana income tax return, as the von Erdmannsdorffs concede they did, which do not include prohibiting the submission of post audit evidence. See, e.g., IND. CODE § 6-8.1-10-2.1 (2000) (amended 2007). (See also Pet'rs' Br. at 31.)

In Allied Collections, the Court did not simply disregard the designated evidence because it was untrustworthy, as the Department has claimed. Instead, the Court determined that because the credibility of the designated evidence was at issue, summary judgment was inappropriate. See Allied Collections Servs., Inc. v. Indiana Dep't of State Revenue, 899 N.E.2d 69, 73-75 (Ind. Tax Ct. 2008). Thus, neither the statutes nor the case law upon which the Department relied support its claim that only contemporaneously prepared and maintained books and records may rebut the presumption of correctness afforded to its BIA Assessments as a matter of law.

The parties do not dispute that the Department's use of the best information available assessment process was authorized by Indiana Code § 6-8.1-5-1(a). (Compare, e.g., Resp't Br. at 8-11 with Pet'rs' Br. at 28.) Nonetheless, the parties vigorously dispute the credibility of each other's designated evidence. Specifically, the von Erdmannsdorffs assert that the Department's estimates are incorrect because they are based on unreliable data derived from BizStats, which on its website "'disclaims any representation as to the accuracy of its [own] statistics.'" (See Pet'rs' Br. at 33 (quoting U.S. v. Montgomery, 747 F.3d 303,313 (5th Cir. 2014)).) In opposition, the Department contends that the von Erdmannsdorffs' estimates are unreliable because they are unsubstantiated and based on the long-ago recollections of Mr. von Erdmannsdorff and his employees. (See, e.g., Resp't Br. at 4-5 (citing Resp't Des'g Evid. Exs. B at 81:3-4,

8

132:10-12, 133:1-15, 133:25 to 134:4 and D at 23:12).)  Consequently, the Court finds that this issue cannot be resolved by means of summary judgment.  See Elmer, 42 N.E.3d at 197 (providing that the summary judgment procedure is not "a tool for deciding where the preponderance of the evidence lies before the evidence has been fully presented").

## II.

The von Erdmannsdorffs also claim that they are entitled to partial summary judgment because the Department erred in computing their Indiana adjusted gross income by 1) combining the gross receipts of Von's Shops and the rental business and 2) failing to account for all of the substantiated expense deductions.  (See Pet'rs' Br. at 14-21.)  In response, the Department admits that it erred.  (See, e.g., Hr'g Tr. at 84-85.)  Nonetheless, the Department asserts that the von Erdmannsdorffs' Counter-Motion should be denied because the errors are harmless and actually decreased their adjusted gross income by a total of nearly $520,000 for all the years at issue.  (See Resp't Reply Br. at 7-10; Hr'g Tr. at 84-90.)

Once raised, this issue must be resolved based on what the law requires, not on whether the Department's methodology ultimately conferred a windfall upon the von Erdmannsdorffs.  Accordingly, the critical question is whether the Department's methodology comports with the law.  (See Resp't Des'g Evid., Ex. C, Stip. Facts ¶ 16, Ex. 12-J at 69-72 (detailing the Department's methodology); Pet'rs' Des'g Evid., Apps. 1, 11, and 12, Ex. 16-J at 423-24, Ex. 9-P at 80:23-25, 81:1-25, 82:1-17, Ex. 10-P at 69:10-25, 70:1-15, 72:9-24 (approving the additional substantiated expense deductions).)  The parties agree that it did not.  (See Pet'rs' Br. at 14-19; Resp't Reply

9

Br. at 8-9 (both providing that the income and expenses of Von's Shops and the rental business should have been separately reported and netted on federal income tax Schedules C and E).) <u>See</u> <u>also</u> <u>Koufos v. Indiana Dep't of State Revenue</u>, 646 N.E.2d 733, 736 (Ind. Tax Ct. 1995) (providing that federal tax forms are designed to implement and illustrate how federal tax law is to be applied); I.C. § 6-3-1-3.5(a) (providing that adjusted gross income under IRC § 62 flows through as the starting point for calculating an individual's Indiana adjusted gross income on an Indiana return). Accordingly, the Court finds that the von Erdmannsdorffs have shown they are entitled to partial summary judgment with respect to this issue as a matter of law.

## CONCLUSION

For the above stated reasons, the Court DENIES the Department's Motion for Summary Judgment with respect to Issue I and GRANTS the von Erdmannsdorffs' Counter-Motion for Partial Summary Judgment with respect to Issue II. Accordingly, the Court will direct the parties regarding the issues remaining for trial under separate cover.

SO ORDERED this 3rd day of June 2016.

Martha Blood Wentworth, Judge
Indiana Tax Court

<u>Distribution:</u>  Randal J. Kaltenmark, Ziaaddin Mollabashy, Jessica R. Gastineau, Andrew T. Grein, Kyle C. Fletcher.

10