## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 12 2016, 9:51 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Paul R. Black
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Darren A. Craig
Abigail T. Rom
Frost Todd Brown, LLC
Indianapolis, Indiana

Rodney Perry
Bryan Cave, LLP
Chicago, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul R. Black and Jane I. Black, *Appellants-Defendants,* <br><br> v. <br><br> Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities, | January 12, 2016 <br><br> Court of Appeals Cause No. 29A02-1503-MF-149 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable Steven R. Nation, Judge <br><br> Trial Court Cause No. 29D01-1106-MF-6218 |

Inc., Asset-Backed Pass-Through
Certificates Series 2006-R2,

*Appellee-Plaintiff.*

**Barnes, Judge.**

## Case Summary

Paul and Jane Black appeal the trial court's order denying their motions for summary judgment and motion to strike and granting a motion for summary judgment filed by Deutsche Bank National Trust Company as trustee for Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates Series 2006-R2 ("the Bank"). We reverse and remand.

## Issue

The Blacks raise two issues, which we consolidate and restate as whether questions of fact preclude the entry of summary judgment for the Bank on the Bank's complaint and the Blacks' counterclaims.

## Facts

In December 2005, the Blacks executed a promissory note and mortgage in favor of Ameriquest Mortgage Company ("Ameriquest") for $212,000.00. The interest rate of the adjustable rate note was subject to change on or after

February 2009. In the meantime, the Blacks' monthly payment for principal and interest was $1,554.11. The terms of the note called for the note holder to give notice of any changes in the interest rate and the amount of the monthly payment before the effective date of any change. The note also contained the following term, "In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the 'Security Instrument'), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note." Appellants' App. p. 28. The note was dated December 27, 2005.

[4] The mortgage executed by the Blacks contained a provision calling for the escrow of certain periodic payments including taxes and insurance. This term provided in part:

> Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay to the Funds for any or all Escrow Items[.] Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. . . . If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower

shall pay to the Lender all Funds, and in such amounts, that are then required under this Section 3.

*Id.* at 34. The notice provision of the mortgage required that all notices be in writing.

[5] The typed date on the mortgage was December 23, 2005. The execution of the mortgage was notarized on December 27, 2005.

[6] During the course of the loan, the loan servicer changed many times, and the mortgage was assigned to the Bank on January 15, 2009. The note was endorsed in blank and eventually made its way to the Bank's possession. The Blacks usually made the monthly payments by credit card telephonically or by check via overnight mail with a tracking receipt. The Blacks made the required monthly payments apparently without issue until June 2010, and, according to Paul Black, they had paid no less than $60,400.00 on the note.

[7] The June 15, 2010 monthly billing statement indicated a principal and interest payment of $1554.10 was due July 1, 2010. The statement also indicated that no escrow balance existed and that no escrow was due. This is consistent with Paul Black's statement that they had never escrowed their insurance and taxes and instead paid them separately. The statement reflected an interest rate of 7.990%, which was consistent with a January 2010 notice that the interest rate would remain 7.990% and "monthly payment, including amounts required for escrow if any, will be $1,554.10." Appellants' App. p. 371. To avoid the accrual of late fees, payment was due by July 15, 2010.

[8] When the Blacks attempted to telephonically make their July payment on July 15, 2010, their $1,554.10 payment was refused and a payment of $2,238.21 was demanded. Consolidated log notes of Paul Black's calls to the servicer indicate that the increase was due to escrow charges. Another monthly billing statement was sent to the Blacks on July 16, 2010, indicating that the July 1, 2010 payment included principal and interest in the amount of $1,554.10 and an escrow payment of $684.11 for a total monthly payment of $2,238.21 due on July 1, 2010. This statement referenced an interest rate of 7.990%. On July 28, 2010, the Blacks again attempted to make a $1,554.10 payment and were told that the new payment amount was $2,331.46.

[9] The Blacks did not make any more payments on the loan, and the loan servicer began attempting to collect the unpaid amounts, late fees, and escrow amounts. Eventually, the Bank filed a complaint on the note and to foreclose the mortgage and, in response, the Blacks raised numerous counterclaims.

[10] The Blacks filed two motions for summary judgment, a motion to strike portions of the Bank's complaint, and a motion to strike portions of the Bank's designated evidence. The Bank filed its own motion for summary judgment and moved to strike the Blacks' reply brief in support of their first motion for summary judgment and their supplemental designation of evidence. After a hearing, the trial court issued an order denying the Blacks' two motions for summary judgment and denying their motion to strike portions of the Bank's complaint. The trial court granted the Bank's motion for summary judgment and motion to strike the Blacks' reply brief and supplemental designation of

evidence. The trial court did not rule on the Blacks' motion to strike portions of the Bank's designated evidence. The Blacks now appeal.

# Analysis

[11] The Blacks contend that the trial court erred in granting the Bank's motion for summary judgment and denying their motions for summary judgment. Summary judgment is appropriate only where the designated evidence shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). We review summary judgment de novo and apply the same standard as the trial court. *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 423 (Ind. 2015). "We consider only those materials properly designated pursuant to Trial Rule 56 and construe all factual inferences and resolve all doubts as to the existence of a material issue in favor of the non-moving party." *Id.* at 424.

## I. Questions of Fact Regarding Default

[12] "To establish a prima facie case that it is entitled to foreclose upon the mortgage, the mortgagee or its assign must enter into evidence the demand note and the mortgage, and must prove the mortgagor's default.*" McEntee v. Wells Fargo Bank, N.A.*, 970 N.E.2d 178, 182 (Ind. Ct. App. 2012). In a summary judgment proceeding, once the mortgagee establishes its prima facie case, the burden shifts to the mortgagor to show that the note has been paid in full or to establish any other defenses to the foreclosure. *Id.*

The Blacks contend that the Bank is not entitled to summary judgment because it did not make a prima facie showing that the Blacks defaulted on the note. To establish default, the Bank designated the affidavit of Kyle Lucas, a senior loan analyst employed by Ocwen Financial Corporation, the then-servicer of the loan.[1] In his affidavit, Lucas stated that the Blacks "have not made their monthly mortgage loan payments since June 2010" and "have defaulted under the Note and Mortgage, and have failed to cure the default." Appellee's App. p. 346. In response, the Blacks argue that Paul Black's affidavit shows they were not in default because they tendered payment of $1,554.11 numerous times and it was refused by the Bank. *See, e.g., Samaddar v. Jones & Jones Agency, Inc.*, 766 N.E.2d 1275, 1278 (Ind. Ct. App. 2002) (observing that the requirements of tender vary with facts and that, where a party prevents and refuses the tender, the party may not complain about what was prevented and refused).

Although the Bank describes Paul Black's affidavit as self-serving, our supreme court has held that "a perfunctory and self-serving" affidavit that controverts a prima facie case for summary judgment is enough to preclude summary judgment. *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014). Moreover, during summary judgment proceedings, the Bank's explanation for the increase in payment was unclear. Lucas did not address the increased payment demand

---

[1] The Blacks moved to strike Lucas's affidavit. The trial court did not rule on this motion. For the sake of argument, we presume the affidavit was admissible and available for consideration in summary judgment proceedings.

in his affidavit and gave only passing reference to the possibility that the interest rate could be increased after February 1, 2009. When questioned about the acceleration of the loan by the trial court at the summary judgment hearing, the Bank's attorney stated her understanding "that they have an adjustable rate mortgage and their interest rate was adjusted pursuant to the terms of the note and the mortgage, which increased their monthly mortgage payment." Tr. p. 41. The Blacks, however, designated statements showing that the interest rate had not increased and, in its answer to the Blacks' counterclaim, the Bank admitted that the interest rate had not changed before the purported default.

[15] On appeal, the Bank claims that the monthly payment increased because the Bank began escrowing taxes and insurance. Again, the Bank describes as self-serving Paul Black's assertions that the Bank agreed not to escrow taxes and insurance and that they paid those items separately. However, Paul Black's assertions are consistent with the June 15, 2010 statement indicating that escrow was not a payment element and that only a principal and interest payment of $1,554.10 was due. Further, the mortgage expressly provided that escrow may be waived in writing and that waiver may be revoked following notice to the borrower as specified by the mortgage. Further, the Final Interest Rate, Payment Due, Fees Paid, and Prepayment Charge form signed by the Blacks on December 27, 2005 explained that the initial monthly payment for the first thirty-six months was $1,554.11. The line detailing the "Amount of Escrow Payment, if any" was blank. Appellants' App. p. 448. The record does

not include a specific waiver of escrow or a notice revoking the waiver of escrow.

[16]     In light of the Blacks' designated evidence, we conclude there are unresolved factual disputes regarding the basis for the increased monthly payment, whether the Blacks were properly notified of the increase, and whether the Blacks' tender of payment was sufficient. As such, the trial court erroneously granted summary judgment for the Bank on its complaint.[2] However, to the extent the Blacks argue that they are entitled to summary judgment on the Bank's complaint, the unresolved questions of fact preclude the grant of summary judgment for them.

[17]     Additionally, the Blacks challenge the grant of summary judgment for the Bank on their counterclaims for first material breach, deception, abuse of process, and slander of title. We conclude that the unresolved questions of fact relating to default render the grant of summary judgment for the Bank improper and preclude summary judgment for the Blacks on their counterclaims.

---

[2] As an affirmative defense, the Blacks asserted that any obligation they had under the note was discharged because the Bank first materially breached the contract. "[U]nder the Restatement (Second) of Contracts, an injured party is not discharged from his duty to perform unless (1) the breach is material, and (2) it is too late for performance or an offer to perform to occur." *Frazier v. Mellowitz*, 804 N.E.2d 796, 803 (Ind. Ct. App. 2004). "[W]hether a party has committed a material breach is a question of fact, the resolution of which is dependent on several factors." *Id.* at 802. The resolution of the questions of fact relating to default will also necessarily include a determination of whether the Bank was the first to materially breach the parties' contract.

## II. Remaining Issues[3]

Although we reverse summary judgment for the Bank based on the unresolved questions of fact relating to default, we address the following issues raised by the Blacks on appeal because they are likely to be raised again in subsequent proceedings.

## A. Date of Mortgage and Note

The Blacks contend that the Bank is not an assignee of the mortgage used to secure the note. This argument is based on the fact that the note is dated December 27, 2005, and references a security instrument "dated the same as this Note." Appellants' App. p. 28. According to the Blacks, because the mortgage was dated December 23, 2005, and the assignment references a December 23, 2015 mortgage, the mortgage was not the security instrument associated with the note. The Blacks argue that the note and mortgage "do not refer to each other, but, instead refer to other instruments that are not in evidence." Appellants' Br. p. 11. In response, the Bank claims that the

---

[3] The Blacks claim that the assignment of mortgage was "fraudulently made and falsely notarized by notorious Florida robosigners . . . ." Appellants' Br. p. 12. In support of this assertion, the Blacks rely on video depositions of the purported robosigners, their affidavits, and Paul Black's affidavit describing parts of the robosigners' testimony. The depositions were taken in other, unrelated litigation. The Bank challenges the admissibility of this evidence, arguing that they contain inadmissible hearsay, that the videos are unauthenticated, and that they violate Indiana Evidence Rule 404(b). "A party offering the affidavit into evidence bears the burden of establishing its admissibility." *McCutchan v. Blanck*, 846 N.E.2d 256, 260 (Ind. Ct. App. 2006). The Blacks make no effort to show that this evidence is admissible pursuant to Indiana Trial Rule 56(E), and we decline to address it further.

December 23, 2005 date on the mortgage was a scrivener's error and that the mortgage was actually executed on December 27, 2005.

[20] We agree with the Bank. Although the typed date on the mortgage is December 23, 2015, the mortgage was notarized December 27, 2005, and indicates that the mortgage was executed on December 27, 2005. Further, in their answer, the Blacks acknowledge executing a mortgage in connection with the note. In his affidavit, Paul Black admitted to having paid at least $60,400.00 toward the loan from 2005 until 2010. Finally, the Blacks cite no evidence for the proposition that they executed two different mortgages and two different notes in December 2005. Without more, the Blacks have failed to show that the misdated mortgage affected their substantial rights, and we must disregard the error. *See* Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

### B. Standing

### 1. Negotiability

[21] The Blacks challenge the Bank's standing. Part of this argument focuses on the negotiability of the note. Indiana Code Section 26-1-3.1-104(a) defines "negotiable instrument" as:

> Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

* * * * *

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

(A) an undertaking or power to give, maintain, or protect collateral to secure payment;

(B) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(C) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

[22] Indiana Code Section 26-1-3.1-106 defines an unconditional promise or order and provides in part:

(a) Except as provided in this section, for the purposes of IC 26-1-3.1-104(a), a promise or order is unconditional unless it states:

(1) an express condition to payment;

(2) that the promise or order is subject to or governed by another record; or

(3) that rights or obligations with respect to the promise or order are stated in another record.

A reference to another record does not of itself make the promise or order conditional.

(b) A promise or order is not made conditional:

> (1) by a reference to another record for a statement of rights with respect to collateral, prepayment, or acceleration; or

> (2) because payment is limited to resort to a particular fund or source.

"[I]t is well-established that a promissory note secured by a mortgage is a negotiable instrument." *Lunsford v. Deutsche Bank Trust Co. Americas as Tr.*, 996 N.E.2d 815, 821 (Ind. Ct. App. 2013).

[23] Paragraph 11 of the note references the mortgage and describes certain conditions in which immediate payment in full might be due. The Blacks argue that, pursuant to Paragraph 11 of the note, they were required to meet certain conditions if they leased, encumbered, or transferred any interest in their home. According to the Blacks, because they were required to do more than merely pay a fixed amount of money, the note was stripped of negotiability. We disagree. These additional conditions allow the lender to protect collateral as permitted by Indiana Code Section 26-1-3.1-104(a)(3)(A).

[24] The Blacks also argue that Paragraph 11 contains express conditions referencing other writings such as the lender's written consent, requests for information, and invoices so as to make the note conditional. Comment 1 to Indiana Code Section 26-1-3.1-106 explains:

subsection (b)(i) permits reference to a separate writing for information with respect to collateral, prepayment, or acceleration.

Many notes issued in commercial transactions are secured by collateral, are subject to acceleration in the event of default, or are subject to prepayment, or acceleration does not prevent the note from being an instrument if the statement is in the note itself. See Section 3-104(a)(3) and Section 3-108(b). In some cases it may be convenient not to include a statement concerning collateral, prepayment, or acceleration in the note, but rather to refer to an accompanying loan agreement, security agreement or mortgage for that statement. Subsection (b)(i) allows a reference to the appropriate writing for a statement of these rights.

Paragraph 11 expressly informs the Blacks that the referenced mortgage describes how and under what circumstances they "may be required to make immediate payment in full of all amounts [they] owe under this Note." Appellants' App. p. 28. Thus, to the extent Paragraph 11 references other writings, it is to explain the terms of acceleration and does not make the note conditional.[4]

### 2. Possession of the Note

The Blacks also contend the Bank was required to plead and prove it had possession of the note at the time it filed the lawsuit and that it failed to make a

---

[4] Although, as the Blacks point out Paragraph 11 uses the term Lender, we do not believe such term is intended to be a specific reference to Ameriquest as the Blacks assert. The terms of the note clearly anticipated that the note could be transferred. This argument is not persuasive.

prima facie showing of such.[5]  This argument is based on out-of-state-authority that describes standing as a "jurisdictional requirement."  *See, e.g., Fed. Home Loan Mortgage Corp. v. Schwartzwald*, 134 Ohio St. 3d 13, 18 (2012).  In Indiana, however, subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs and characterizing other sorts of procedural defects as "jurisdictional" misapprehends the concepts.  *K.S. v. State*, 849 N.E.2d 538, 542 (Ind. 2006).  For example, in the context of a petition for judicial review, we have recently explained, "Although HRC Hotels may have lacked standing when it filed its petition, the lack of standing at the time the petition is filed is a procedural error.  It does not deprive the court of jurisdiction to hear the petition for judicial review."  *HRC Hotels, LLC v. Metro. Bd. of Zoning Appeals Div. II of Marion Cty.*, 8 N.E.3d 203, 207 (Ind. Ct. App. 2014).  Likewise, even if the Bank was not in possession of the note at the time the complaint was filed, the trial court was not deprived of subject matter jurisdiction to address the Bank's complaint.

[26]  As we have determined, the note is a negotiable instrument, which may be enforced by "the holder of the instrument."  Ind. Code § 26-1-3.1-301.  "The

---

[5]  In their reply brief, the Blacks argue that the Bank was required to plead and prove it owned the mortgage at the time the complaint was filed.  Because they raise this argument for the first time in their reply brief, it is waived.  *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived.").

term 'holder' includes the person in possession of a negotiable instrument that is payable to 'bearer' or a person in possession of a negotiable instrument 'payable to bearer or endorsed in blank.'" *Lunsford*, 996 N.E.2d at 821 (quoting I.C. § 26-1-1-201(5), -201(20)(A)). Here, the note was endorsed in blank, the Bank's counsel had possession of the note, and it was made available to the Blacks in 2013. Thus, the Bank has established that it is entitled to enforce the note as the holder. Accordingly, we fail to see how the purported lack of possession of the note when the complaint was filed affected the Blacks' substantial rights.[6] *See* Ind. T.R. 61.

### C. High-Cost Home Loan

[27] As an affirmative defense and counterclaim, the Blacks alleged that the loan was a high-cost home loan pursuant to Indiana Code Section 24-9-2-8(a)(2)(A), which defines "high cost home loan" as a home loan with "total points and fees that exceed . . . five percent (5%) of the loan principal for a home loan having a loan principal of at least forty thousand dollars ($40,000)." The Blacks claim that they were charged $12,277.97 in points and fees for the $212,000.00 loan,

---

[6] The Blacks also claim that Ameriquest was not permitted to sell the note, which they describe as a high cost home loan, pursuant to Indiana Code Section 24-9-4-1 and that the transfer to the Bank was prohibited by the Internal Revenue Code. Because the Bank was in possession of the note, we do not address these theories regarding the transfer of the note as they relate to standing.

exceeding the 5% limit. The Bank asserts that the total points and fees for the loan was $2,784.00.[7]

[28] Neither party, however, provides a detailed analysis of points and fees in light of the statutory definition. *See* I.C. § 24-9-2-10. Nor does either party discuss whether the $7,704.08 in "loan discount" constitutes "bona fide discount points" as statutorily defined in Indiana Code Section 24-9-2-3. Appellee's App. p. 987. Without such analysis, we cannot determine whether the loan was a high-cost home loan.

[29] Nevertheless, we are not persuaded that, even if the loan is a high-cost home loan, it is void as against public policy as the Blacks claim. Indiana Code Section 24-9-5-1(b) describes the recourse available to a borrower defending against a foreclosure action. This section does not declare any such loan void. In the absence of specific authority showing that a violation of this chapter renders the loan void, we decline to adopt such a holding.

## Conclusion

[30] Because there are genuine issues of material fact regarding default, the trial court erroneously granted summary judgment for the Bank. We reverse and remand for further proceedings.

---

[7] In support of this claim, the Bank cites a settlement statement. *See* Appellee's App. p. 987. Although this document is difficult to read, it does not appear on its face to provide support for this figure.

Reversed and remanded.

Robb, J., and Altice, J., concur.